JUDGE KAPLAN                    11 CIV 0247

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                    Plaintiff/Respondent,

v.

MANUEL SALAZAR-ESPINOSA,

                    Defendant/Movant.

_____/

Case Nos.  **10-CV-____**
05-CR-00517 Kaplan

RECEIVED
JAN 13 2011
U.S.D.C. S.D.N.Y.
CASHIERS

## APPENDIX TO MEMORANDUM BRIEF IN SUPPORT OF PETITION TO VACATE SENTENCE FILED PURSUANT TO 28 U.S.C. §2255

| | EXHIBIT |
|---|---|
| Cable/Report of Post Arrest Interview of Salazar dated 5/23/2005 | A |
| Cable/Report of Post Arrest Interview of Salazar dated 5/26/2005 | B |
| Affidavit by Diego Javier Espitia Plaza | C |
| Request & Response Letters along with Excerpt of Prison Log at the Bunker de la Fiscalia Nivel Central, 5/26/2005 ("Prison Log") | D |
| Notification of Extraterritorial Rights ("Notificacion Extraterritorial de Derechos") signed 5/23/2005 | E |
| Notification of Extraterritorial Rights ("Notificacion Extraterritorial de Derechos") initialed 5/26/2005 | F |
| Letter of January 8, 2007 from Petitioner to Lawrence Herrmann, Esq. | G |
| Letter dated January 10, 2007 from Lawrence Herrmann, Esq. to District Judge Kaplan | H |
| Letter to Lawrence Herrmann, Esq. from Manuel Salazar dated 2/15/2007 | I |
| Letter to Lawrence Herrmann, Esq. from Manuel Salazar dated 2/16/2007 | J |
| Letter to Lawrence Herrmann, Esq. from Manuel Salazar dated 3/12/2007 | K |
| *United States v. Salazar-Espinosa*, Lawrence Herrmann, Esq., Letter Motion to the district court dated March 30, 2007, filed on April 2, 2007, DE 32 | L |
| Affidavit by Manuel Salazar Espinosa in Support of Section 2255 Petition | M |

Defendant's Motion to Preclude Admission of Defendant's Post-Arrest Statements, DE 84                                                                    N

Letter from Linda George, Esq. to Assistant United States Attorney dated 4/20/2007                                                                         N-1

Letter dated June 7, 2007, from U.S. Attorney Garcia to Linda George, Esq.       O

Respectfully submitted,

By: _____

NEIL M. SCHUSTER, P.A.
Florida Bar No. 216909
555 N.E. 15th Street, Suite 2C
Miami, FL   33132
(305) 416-0324
Fax: (305) 416-0325

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished by mail this _____ day of January, 2011 to **Iris Lan, AUSA,** Office of the U.S. Attorney, One St. Andrew's Plaza, New York , NY 10007.

By: _____

Neil M. Schuster

# EXHIBIT A

**Cable/Report of Post Arrest Interview of Salazar**

**Dated:  May 23, 2005**

STATES PROVISIONAL ARREST ..KRA. . FOR SALAZAR-ESPINOSA. ... .... .....
TRANSPORTED BY THE BOGOTA CTI-SIU TO THE CALI CTI OFFICE IN CALI, COLOMBIA FOR PROCESSING.
BIO SA,S WARREN LOWE AND TERRY COLE ADVISED SALAZAR-ESPINOSA OF HIS EXTRATERRITORIAL DE
DERECHOS (MIRANDA

'GHTS) AND SALAZAR-ESPINOSA WAS PROVIDED A COPY OF THESE RIGHTS TO READ. THESE
RATERRITORIAL DE DERECHOS (MIRANDA

RIGHTS) WERE IN SPANISH. SALAZAR-ESPINOSA STATED HE
UNDERSTOOD HIS RIGHTS, SIGNED THE EXTRATERRITORIAL DE
DERECHOS AND AGREED TO TALK SA,S LOWE AND COLE. THE ORGINAL SIGNED NOTIFICATION OF
EXTRATERRITORIAL DE DERECHOS WILL BE LABELED AS DEA NON-DRUG EXHIBIT N-1. A COPY OF THIS
FORM WILL BE PLACED WITH THE CASE FILE. 6. (SBU) SALAZAR-ESPINOSA STATED HE LIVED IN
COLOMBIA FOR NUMEROUS YEARS BEFORE MOVING TO MEXICO CITY, MEXICO D.F. IN THE EARLY 1980,S.
SALAZAR-ESPINOSA STATED THAT HE WORKED FOR COLOMBIAN NATIONAL PACHO HERRERA (DECEASED)
DURING THE EARLY 1990,S. SALAZAR-ESPINOSA,S JOB WITHIN THE PACHO HERRERA DRUG TRAFFICKING
ORGANIZATION WAS TO ARRANGE THE MOVEMENT OF DRUG PROCEEDS FROM NEW YORK CITY TO CALI,
COLOMBIA. SALAZAR-ESPINOSA STATED THAT THIS MOVEMENT OF DRUG PROCEEDS WAS USUALLY IN BULK
MONEY SHIPMENTS. MEANING THAT SALAZAR-ESPINOSA WOULD RECRUIT MONEY &MULES@ THAT WOULD
CARRY SUITCASES FULL OF US CURRENCY FROM NEW YORK CITY VIA COMMERICAL AIRCRAFT TO
COLOMBIA. SALAZAR-ESPINOSA ESTIMATED THAT EACH SUITCASE CONTAINED AT LEAST 2 MILLION
DOLLARS IN US CURRENCY. SA COLE ASKED WHY THE FIGURE OF 2 MILLION DOLLARS. SALAZAR-
ESPINOSA RESPONDED BECAUSE THEY COULDN,T PUT ANY MORE MONEY IN THE SUITCASE. SALAZAR-
ESPINOSA STATED THAT THIS BUSINESS CONTINUED FOR NUMEROUS YEARS UNTIL THE DEATH OF PACHO
HERRERA IN PALIMIRA, COLOMBIA. SALAZAR-ESPINOSA STATED THAT DRUG TRAFFICKER WILMER VARELA
KILLED PACHO HERRERA OVER A DRUG DISPUTE. SALAZAR-ESPINOSA STATED THAT THIS OFFICALLY
STARTED THE WAR WITHIN THE NORTE VALLE CARTEL. 7. (SBU) SALAZAR-ESPINOSA STATED THAT HE
CURRENTLY KNOWS AND CONDUCTS DRUG TRAFFICKING BUSINESS WITH MEXICAN DRUG TRAFFICKER OSCAR
VALENCIA, VALENCIA,S COUSIN, ARMANDO VALENCIA AND GUATAMALEN DRUG TRAFFICKER JORGE MARIO.
LNU. THESE THREE DRUG TRAFFICKERS ARE PART OF THE MEXICAN DRUG CARTEL. SALAZAR-ESPINOSA
STATED A MEXICAN SUBJECT NAMED JOSE FRANCISCO GONZALEZ INTRODUCED SALAZAR-ESPINOSA TO
OSCAR VALENCIA AND JORGE MARIO, LNU IN 2002 AND SHORTLY AFTER VALENCIA ASKED SALAZAR-
ESPINOSA FOR A FAVOR. VALENCIA ASKED SALAZAR-ESPINOSA TO COORDINATE THE TRANSPORTION OF 8
MILLION DOLLARS IN TWO CARS TO PANAMA CITY, PANAMA. SALAZAR-ESPINOSA STATED HE PAID THE
TRANSPORTERS (UNIDENTIFIED) OF THE MONEY A 5% COMMISSION TO DELIVER THE MONEY TO PANAMA.
SALAZAR-ESPINOSA STATED THAT THE 8 MILLION DOLLARS WAS TO GIVEN TO COLOMBIAN DRUG
TRAFFICKERS (UNKNOWN TO SALAZAR-ESPINOSA) FOR PAYMENT OF A DRUG SHIPMENT THAT MADE IT TO
HE UNITED STATES. SALAZAR-ESPINOSA STATED THAT THIS GROUP MOVES BETWEEN 5,000
T,000 KILOGRAM,S OF COCAINE ON A WEEKLY BASIS AND HE HAD RECENTLY ATTENDED MEETINGS
WHERE THE ABOVE TRAFFCIKERS NEGOTIATED/COORDINATED THESE COCAINE LOADS. SALAZAR-ESPINOSA
STATED THAT VALENCIA AND JORGE MARIO, LNU COORDINATE THESE MULTI-THOUSAND KILOGRAM LOADS
WITH AUC (COLOMBIA
AUTODEFENSES) COMMANDER &MACACO@, JUAN CARLOS
JIMENEZ-NARANJO. THE VALENCIA,S UTILIZE LARGE COMMERICAL AIRCRAFT TO RECEIVE THESE
SHIPMENTS OF COCAINE IN THE MEXICO D.F. SALAZAR-ESPINOSA STATED THAT HE HAS IN THE PAST
PUT THESE MEXICAN TRAFFICKERS IN CONTACT WITH COLOMBIAN PILOTS FROM BOGOTA TO FACILITATE
THE SHIPMENT OF COCAINE FROM COLOMBIA TO MEXICO D.F. SALAZAR-ESPINOSA STATED THAT SOME OF
THESE DRUG SHIPMENTS LEAVE FROM BOGOTA, BARRANQUILLA AND SMALL RURAL RUNWAYS NEAR
BUCARAMANGA, COLOMBIA. THESE AIRPLANES FLY DIRECT FROM COLOMBIA TO MEXICO CITY D.F. WHERE
THE COCAINE WAS OFF LOADED BY MEMBERS OF THE MEXICAN CARTEL. ONCE THE COCAINE IS OFF
LOADED IT IS STORED IN LOCAL &BODEGAS@ (WAREHOUSES) AND THEN REPACKED IN CONTAINERS FOR
SHIPMENT VIA LAND TO THE FINAL DESTINATION OF NEW YORK, NEW YORK. SALAZAR-ESPINOSA ALSO
STATED THAT SOMETIMES THESE DRUG SHIPMENTS WOULD ARRIVE IN GUATEMALA THEN BE SHIPPED VIA
TRACTOR TRAILERS TO MEXICO CITY D.F. THEN SENT TO NEW YORK. 8. (SBU) SALAZAR-ESPINOSA THA
HIS ROLE WITHIN THIS ORGANIZATION WAS TO ARRANGE BULK MONEY SHIPMENTS FROM NEW YORK TO
MEXICO AND COLOMBIA. SALAZAR-ESPINOSA STATED THAT THIS ORGANIZATION WOULD MOVE BETWEEN 12
14 MILLION DOLLARS PER WEEK. THIS MONEY WAS THE DRUG PROFIT FROM THE SHIPMENTS OF COCAINE
TO NEW YORK. BUT, SALAZAR-ESPINOSA REFUSED TO ANSWER QUESTIONS ON HOW THE MONEY IS
CURRENTLY BEING MOVED FROM NEW YORK TO MEXICO AND COLOMBIA. FURTHERMORE, SALAZAR-ESPINOS/
REFUSED TO PROVIDE CURRENT CONTACTS OF NORTE VALLE TRAFFICKERS IN COLOMBIA. 9. (SBU)
SALAZAR-ESPINOSA STATED THAT THE CURRENT PRICE OF A KILOGRAM OF COCAINE IS BETWEEN 17,00
18,000 US DOLLARS IN NEW YORK AND IN MEXICO CITY D.F. THE PRICE OF A COLOMBIA KILOGRAM O
COCAINE IS BETWEEN 8,000-9,000 US DOLLARS. SALAZAR-ESPINOSA HAS HEARD THE ABOVE MEXICAN
TRAFFICKERS TALKING ABOUT THE PROFIT MARGIN THEY WOULD BE EARNING BASED ON CURRENT PRICE
10. (SBU) SALAZAR-ESPINOSA STATED THAT COLOMBIAN DRUG TRAFFICKERS (NOT IDENTIFIED) WOULD
USE CONTACTS/PILOTS/AIRPLANES FROM THE BOGOTGA AIRPORT, BARRANQUILLA AIRPORT AND SMALL
AIRFIELD (CLANDESTINE) NEAR BUCARAMAGA TO SEND DRUG SHIPMENTS TO MEXICO D.F. 11. (SBU

FROM IPIALES, COLOMBIA TO CALI, COLOMBIA. 4. (SBU) AT APPROXIMATELY 5:30 PM, SALAZAR-
ESPINOSA ACCOMPANIED BY A COLOMBIAN FEMALE ARRIVED AT THE CALI INTERNATIONAL AIRPORT VIA
TAC CHARTER AIRCRAFT, TAIL NUMBER HR4260. SALAZAR-ESPINOSA PRESENTED BOGOTA CTI-SIU
MEMBERS A COLOMBIAN IDENTIFICATION CARD THAT IDENTIFIED SALAZAR-ESPINOSA AS A MEMBER OF
CONGRESS IN COLOMBIA. MEMBERS OF THE BOGOTA CTI-SIU ARRESTED SALAZAR-ESPIONOSA ON A
COLOMBIAN ARREST WARRANT THAT WAS ISSUED BASED ON PROBABLE CAUSE LISTED IN THE UNITED

**Cable/Report of Post Arrest Interview of Salazar**

**Dated: May 26, 2005**

UNCLASS E F T O
DEA 05/26/05
DEA:DGADDIS
DEA:CFEISTL
DEA:CULRICH
DEA:KROBINSON

DEA AMEMBASSY BOGOTA
AMEMBASSY MEXICO CITY DF
DEA HQS WASHDC
DEA NEW YORK FD
DEA MIAMI FD

SENSITIVE
POST FOR DEA ONLY

DEA HQS FOR: DEA HQS FOR: OI/WHALEY, OEL/STEFFICK, SEGEDA, TREMPALA, SARI, OSL/ASAC MCARDLE, SC KOLEN.

DEA MIAMI FD FOR ASAC FRED GANEM, GS MIKE PREMO, AND SA GREGORY MILLARD

DEA NEW YORK FD FOR ASAC HEIDI RAFANELLO, T-41 GS/SGT JOE OSHEA, T-41 TFO JOHN BARRY, AND T-41 SA ERIC TRIANA

AMEMBASSY MEXICO CITY FOR DEA GS MICHAEL CORBETT AND RD LARRY HOLLIFIELD

E.O. 12958: N/A
TAGS:   DEA
SUBJECT: ARREST AND SUBSEQUENT DEBRIEFING OF CPOT TARGET MANUEL SALAZAR ESPINOSA IN BOGOTÁ, CB 5/26/2005 (ZE-03-0034/YEC1K; NARVAEZ, CARLOS).



SALAZAR-ESPINOSA, HOOVER
OPERATION ESPERANZA
SALAZAR ESPINOSA, MANUEL

2. (SBU) THE BRD HAS BEEN IN CLOSE COORDINATION WITH NEW YORK FIELD DIVISION GROUP T-41, MIAMI FIELD DIVISION GROUP 4, SPECIAL OPERATION DIVISION (SOD) OSL AND THE MERIDA, MEXICO RESIDENT OFFICE IN REFERENCE TO SALAZAR ESPINOSA.  THE UNITED STATES ATTORNEY'S OFFICE IN THE SOUTHERN DISTRICT OF NEW YORK AND THE SOUTHERN DISTRICT OF FLORIDA HAVE SECURED UNITED STATES FEDERAL DRUG INDICTMENTS AGAINST SALAZAR ESPINOSA. IN MAY 2005, THE SOUTHERN DISTRICT OF NEW YORK SENT THE PROVISIONAL ARREST WARRANT TO THE UNITED STATES EMBASSY IN BOGOTÁ, COLOMBIA.

3. (SBU) THE BOGOTÁ CTI-SIU DEVELOPED INTELLIGENCE INFORMATION WHICH INDICATED THAT SALAZAR ESPINOSA WOULD BE TRAVELING TO CALI, COLOMBIA TO CELEBRATE HIS BIRTHDAY IN MAY 2005.  AT APPROXIMATELY 5:30 PM ON MAY 23, 2005, SALAZAR ESPINOSA AND AN UNIDENTIFIED COLOMBIAN FEMALE ARRIVED AT THE CALI INTERNATIONAL AIRPORT VIA TAC CHARTER AIRCRAFT. MEMBERS OF THE BOGOTÁ CTI-SIU ARRESTED SALAZAR ESPINOSA ON A

COLOMBIAN ARREST WARRANT THAT WAS ISSUED BASED ON PROBABLE CAUSE
LISTED IN THE UNITED STATES PROVISIONAL ARREST WARRANT FOR SALAZAR
ESPINOSA. (NOTE: REFERENCE DEA TWX DATED 5/24/2005, DRAFTED BY SA
TERRY COLE FOR ADDITIONAL DETAILS REGARDING THE POST-ARREST INTERVIEW
AND STATEMENTS OF SALAZAR ESPINOSA IN CALI, CB)

4. (SBU) ON MAY 24, 2005, SALAZAR ESPINOSA WAS TRANSFERRED TO THE
COLOMBIAN FISCALIA HEADQUARTERS IN BOGOTA, COLOMBIA. SALAZAR-
ESPINOSA WAS PLACED IN A TEMPORARY HOLDING FACILITY AT THE FISCALIA'S
OFFICE WHILE AWAITING TRANSFER TO A LOCAL PRISON.

5. (SBU) BRD SA'S WARREN LOWE AND TERRY COLE ALONG WITH IRS KELLY
ROBINSON WENT TO THE COLOMBIAN FISCALIA OFFICE ON MAY 26, 2005, TO
FURTHER DEBRIEF SALAZAR ESPINOSA REFERENCE HIS DRUG TRAFFICKING AND
MONEY LAUNDERING ACTIVITIES. SA LOWE AGAIN ADVISED SALAZAR ESPINOSA
OF HIS EXTRATERRITORIAL DE DERECHOS (MIRANDA RIGHTS) AND SALAZAR
ESPINOSA WAS PROVIDED A COPY OF THESE RIGHTS TO READ (NOTE: THESE
EXTRATERRITORIAL DE DERECHOS (MIRANDA RIGHTS) WERE TYPE-WRITTEN IN
SPANISH.) SALAZAR ESPINOSA STATED HE UNDERSTOOD HIS RIGHTS, INITIALED
AND DATED EACH STATEMENT OF THE EXTRATERRITORIAL DE DERECHOS AND
AGREED TO TALK SA'S LOWE AND COLE AND IRS ROBINSON.

6. (SBU) SALAZAR ESPINOSA BEGAN THE DEBRIEFING BY DISCUSSING AN UPCOMING
COCAINE SHIPMENT THAT HE WAS COORDINATING. SALAZAR   ESPINOSA
REPORTED THAT FRANCISCO GONZALEZ AND MANUEL OSCAR VALENCIA   (BOTH
MEXICAN NATIONALS) APPROACHED SALAZAR ESPINOSA REGARDING THE
TRANSPORTATION OF A LOAD OF COCAINE.  THE INITIAL MEETING BETWEEN
SALAZAR ESPINOSA, GONZALEZ, AND VALENCIA TOOK PLACE IN MEXICO AT A
COFFEE SHOP.  SUBSEQUENT TO THIS INITIAL MEETING THE THREE
INDIVIDUALS MET AT A RESTAURANT IN MEXICO CITY, D.F. TO FURTHER
DISCUSS THE DETAILS OF THE PREVIOUSLY MENTIONED LOAD.  THE SECOND
MEETING TOOK PLACE IN A LOCAL RESTAURANT, IDENTIFIED AS SANBORNS ON
MAY 19, 2005. SALAZAR ESPINOSA NOTED THAT GONZALEZ AND VALENCIA DO
NOT USE CELL PHONES OR LAND LINES TO COMMUNICATE BUT RATHER TALK VIA
NEXTEL RADIO.  SALAZAR ESPINOSA DOES NOT KNOW THE RADIO CODES OR
PHONE NUMBERS FOR EITHER GONZALEZ OR VALENCIA, HE INDICATED THAT
THEIR CODES ARE PROGRAMMED INTO HIS NEXTEL RADIO WHICH IS AT HIS HOME
IN MEXICO.

7. (SBU) SALAZAR ESPINOSA INDICATED THAT GONZALEZ AND VALENCIA WERE
TRYING TO COORDINATE THE TRANSSHIPMENT OF 5,000 KILOGRAMS OF COCAINE.
GONZALEZ AND VALENCIA RECRUITED SALAZAR ESPINOSA TO FIND A COLOMBIAN
PILOT WHO COULD TRANSPORT THE 5,000 KILOGRAM LOAD (NOTE: SALAZAR
ESPINOSA DID NOT REVEAL THE ORIGIN OF THE LOAD NOR THE PICK-UP OR
DROP-OFF LOCATIONS. HE DID INDICATE THAT THE LOAD WAS ULTIMATELY
DESTINED FOR NEW YORK, NEW YORK).  AT THE CONCLUSION OF THIS MEETING
SALAZAR ESPINOSA AGREED TO LOCATE AND RECRUIT AN EXPERIENCED
COLOMBIAN PILOT TO TRANSPORT THE LOAD.

8. WHEN ASKED WHEN HE MET VALENCIA, SALAZAR ESPINOSA REPLIED THAT THEY
MET 6-8 MONTHS AGO IN OCTOBER OR NOVEMBER 2004. WHEN ASKED WHY
VALENCIA FELT COMFORTABLE APPROACHING SALAZAR ABOUT ASSISTING WITH
TRANSPORTING COCAINE AFTER ONLY BEING ACQUAINTED FOR 6-8 MONTHS,
SALAZAR ESPINOSA REPLIED THAT VALENCIA KNEW THAT SALAZAR ESPINOSA WAS
A COLOMBIAN NATIONAL AND ASSUMED THAT AS A RESULT OF SALAZAR
ESPINOSA'S NATIONALITY HE COULD SUCCESSFULLY RECRUIT A PILOT.
(NOTE: IN THE POST ARREST DEBRIEFING OF SALAZAR ESPINOSA ON 5/23/2005,

HE INDICATED TO S/A'S LOWE AND COLE THAT HE MET VALENCIA AND SOME
OTHER MEXICAN NATIONAL DRUG CARTEL MEMBERS IN 2002, REF. PARAGRAPH 7
OF THE TWX DRAFTED BY SA COLE ON 5/24/2005).

9.  (SBU) SALAZAR ESPINOSA REPORTED THAT HE WAS GOING TO BE PAID A
COMMISSION FOR HIS RECRUITING EFFORTS, BUT DID NOT ARTICULATE HOW
MUCH HE WAS GOING TO BE PAID.  SALAZAR ESPINOSA INDICATED THAT
GONZALEZ AND VALENCIA DID NOT DISCUSS THE DETAILS OF HIS COMMISSION
AND THAT TYPICALLY SEVERAL VARIABLES GO INTO THE PROCESS OF PAYING A
COMMISSION.  ACCORDING TO SALAZAR ESPINOSA, GONZALEZ AND VALENCIA
WERE IN THE BEGINNING STAGES OF COORDINATING THIS LOAD AND THE TOPIC
OF COMMISSIONS WOULD PROBABLY NOT BE DISCUSSED UNTIL THE DEAL WAS
FINALIZED.  SALAZAR ESPINOSA WENT ON TO SAY THAT HIS COMMISSION WOULD
LIKELY BE PAID FROM THE PILOT'S PROCEEDS.

10.  (SBU) SALAZAR ESPINOSA REVEALED THAT HE FLEW TO CALI, COLOMBIA ON
5/23/2005, TO HAVE SOME DENTAL WORK DONE AT A LOCAL DENTIST'S
OFFICE.  HE THEN PLANNED TO FLY TO BOGOTÁ, COLOMBIA TO RECRUIT A
PILOT. INITIALLY SALAZAR ESPINOSA REPORTED THAT HE PLANNED TO MEET
WITH MULTIPLE PILOTS, BUT WHEN ASKED TO IDENTIFY SPECIFICALLY WHO HE
PLANNED TO TALK TO UPON ARRIVING IN BOGOTÁ, HE ONLY IDENTIFIED
ROBERTO GONZALEZ.  ACCORDING TO SALAZAR ESPINOSA, GONZALEZ IS AN
EXPERIENCED PILOT BASED IN BOGOTÁ, COLOMBIA; HE IS APPROXIMATELY 50
YEARS OF AGE, SHORT IN STATURE, WITH A MOUSTACHE.  SALAZAR-ESPINOSA
AND GONZALEZ HAVE KNOWN EACH OTHER FOR APPROXIMATELY 10 YEARS BUT
SALAZAR-ESPINOSA DOES NOT KNOW GONZALEZ'S COMPLETE NAME, HOME
ADDRESS OR PHONE NUMBER.  SALAZAR ESPINOSA STATED THAT WHEN HE WANTS
TO TALK TO GONZALEZ HE SIMPLY GOES TO LOCATIONS THAT GONZALEZ
FREQUENTS.  HE BECAME EVASIVE WHEN ASKED TO REVEAL THE NAMES OF THE
LOCATIONS.

11.  (SBU) SALAZAR ESPINOSA INSISTED THAT HE HAD NO FURTHER DETAILS
REGARDING THE 5,000 KILOGRAM COCAINE SHIPMENT BECAUSE FRANCISCO
GONZALEZ AND VALENCIA WERE IN THE BEGINNING STAGES OF ARRANGING THE
DEAL AND ADDITIONAL DETAILS WOULD BE DISCUSSED AFTER SALAZAR
ESPINOSA SECURED A PILOT AND RETURNED TO MEXICO.  SALAZAR ESPINOSA
STATED THAT SINCE HE HAS BEEN ARRESTED AND THE STORY OF HIS ARREST
WAS LIKELY IN THE MEDIA HIS OPPORTUNITY TO GATHER ADDITIONAL DETAILS
ABOUT THIS DEAL HAD BEEN SIGNIFICANTLY DIMINISHED.

**FINANCIAL:**

12.  (SBU) SA COLE ASKED SALAZAR ESPINOSA ABOUT HIS PERSONAL FINANCES AND
HOW HE CURRENTLY EARNS A LIVING.  SALAZAR ESPINOSA STATED THAT HE IS
NOT CURRENTLY INVOLVED IN DRUG TRAFFICKING AND HAS NOT BEEN
ASSOCIATED WITH TRAFFICKING FOR MANY YEARS.  SALAZAR ESPINOSA
REPORTED THAT HE IS A BUSINESS MAN AND IS INVOLVED IN REAL ESTATE
INVESTMENTS AND OTHER BUSINESSES.  WHEN ASKED TO IDENTIFY PROPERTIES
THAT HE OWNS IN THE U.S., SALAZAR ESPINOSA REPLIED THAT HE DOES NOT
OWN ANY PROPERTY IN THE U.S.  WHEN ASKED IF ANY OF HIS FAMILY
MEMBERS HAVE PURCHASED PROPERTY OR BUSINESSES ON HIS BEHALF IN THE
U.S., SALAZAR ESPINOSA ADMITTED TO PAYING HIS EX-WIFE $1 MILLION
DOLLARS (U.S.), 10 YEARS AGO AND FURTHER STATED THAT SHE HAS
PURCHASED PROPERTY AND PERHAPS ESTABLISHED BUSINESSES WITH THE MONEY
HE GAVE HER.  (NOTE: SALAZAR ESPINOSA WAS PREVIOUSLY MARRIED TO
MARIA FERNANDO DEL ROSARIO POTES-OCAMPO, AND THE $1 MILLION DOLLARS
WAS A DIVORCE SETTLEMENT THAT HE PAID HIS FORMER WIFE AFTER THE
MARRIAGE WAS TERMINATED.)

13.   (SBU) SA LOWE ASKED SALAZAR ESPINOSA TO IDENTIFY HIS OTHER
      BUSINESSES AND SALAZAR ESPINOSA REITERATED THAT HE PRIMARILY WORKS
      IN REAL ESTATE AND WITH REAL ESTATE BROKERS.   WHEN ASKED TO IDENTIFY
      THE NAMES OF THE BROKERS HE HAS WORKED WITH, HE REPLIED THAT "THERE
      WERE SEVERAL".   WHEN ASKED TO IDENTIFY THE PROPERTIES OR THE NAMES
      ON THE PROPERTIES HE BECAME EVASIVE AND REPLIED "THERE WERE
      SEVERAL."

14.   (SBU) SALAZAR-ESPINOSA LATER ADMITTED TO OWNING A SMALL BUSINESS IN
      MEXICO.   SALAZAR ESPINOSA IDENTIFIED THE BUSINESS AS TRICORB
      INTERNATIONAL AND STATED THAT IT IS A CLOTHING AND UNIFORM
      MANUFACTURING COMPANY.   SALAZAR ESPINOSA FURTHER STATED THAT HE DOES
      NOT HAVE ANY TIES TO ANY U.S. BUSINESSES, PROPERTIES OR ACCOUNTS.

15.   (SBU) SA LOWE INQUIRED ABOUT SALAZAR ESPINOSA TRANSFERRING MONEY
      FROM THE U.S. TO COLOMBIA.   SALAZAR ESPINOSA DENIED EVER
      TRANSFERRING MONEY FROM COLOMBIA TO THE U.S.   WHEN ASKED IF HE HAD
      TRANSFERRED MONEY FROM THE U.S. TO COUNTRIES OTHER THAN
      COLOMBIA, INCLUDING MEXICO AND/OR EUROPE, SALAZAR ESPINOSA DENIED
      TRANSFERRING MONEY TO/OR FROM THE U.S. TO OTHER COUNTRIES.   WHEN
      ASKED WHEN HE LAST ATTEMPTED TO TRANSFER $500,000 (U.S.) OR MORE
      FROM THE U.S. TO COLOMBIA, SALAZAR ESPINOSA BECAME AGITATED AND
      DENIED TRANSFERRING MONEY AND ANNOUNCED THAT HE WANTED TO CONCLUDE
      THE DEBRIEFING.   SUBSEQUENT TO MAKING THIS STATEMENT, SALAZAR
      ESPINOSA LEFT THE INTERVIEW ROOM AND WAS RETURNED TO HIS HOLDING
      CELL.

INDEXING

# EXHIBIT B

**Notaría Tercera de Bogotá**
Manuel J. Caroprese Méndez

# ACTA DE DECLARACIÓN JURAMENTADA Nº 15786

**COMPARECIO: DIEGO JAVIER ESPITIA PLAZA**, quien se identifica con la cédula de ciudadanía Número 19.487.418 Expedida en Bogota D.C, mayor de edad de Estado Civil: casado con sociedad conyugal vigente, de ocupación: Abogado con T.P. No 66789 del C.S.J, residente en la carrera 6 No 11 – 54 Of. 714 Edificio la Libertad Barrio Centro De la ciudad de Bogota D.C  y TEL: 3214342519.-----------
-----------------------------------------------------------------------------------------

Suscribe la presente Acta para fines extraprocesales de conformidad con lo dispuesto en los artículos 1º y 141 del Decreto Ley 1557 y 2282 de 1.989, Advirtiéndoles de las sanciones que establecen los Artículos 266,  269 y 442 del Código Penal y de Procedimiento Penal, dejando constancia de lo siguiente: ------
-----------------------------------------------------------------------------------------

**PRIMERO:** Que todas las declaraciones que aquí se presentan se hacen bajo la gravedad del juramento. -----------------------------------------------------------------------
**SEGUNDO:** Que es plenamente capaz y no tiene ningún impedimento para presentar las declaraciones requeridas ni para suscribir la presente acta.-----------
-----------------------------------------------------------------------------------------

**TERCERO:** Que bajo la gravedad de Juramento **MANIFIESTO:** Que Soy actualmente un abogado licenciado y autorizado a servir como un consejero en derecho en mi domicilio la republica de Colombia. Durante el año candelario del 2005 yo también esta licenciado para ejercer mi profesión de Abogado en mi país Colombia. Yo conozco a MANUEL SALAZAR ESPINOSA, y lo represente en Colombia en relación con los procedimientos de extradición iniciados por los Estados Unidos de América dirigido a Colombia, tratando su enjuiciamiento en una variedad de cargos que estaba pendiente del 2005 en el S.D.N.Y. en el 2005 yo estaba disponible para proporcionar información, asesoria jurídica o consejo respecto de cualquier declaración del señor MANUEL SALAZAR ESPINOSA con destino a cualquier autoridad judicial de  Estados Unidos de América, si el lo hubiese solicitado y yo hubiese tenido la oportunidad de hacerlo, cuando se encontraba detenido en la sede de la Fiscalia General de la Nación en Bogota, de mayo 23 a 26 de 2005.  A mi mejor recuerdo durante mayo 23 a 26 de 2005 mi cliente MANUEL SALAZAR ESPINOSA fue recluido en bogota en la sede de la Fiscalia General de la Nación lugar comúnmente conocido como el "Bunker". En orden para que cualquier persona pueda entrar en la fiscalia en Bogota, a las celdas donde se encontraba detenido SALAZAR ESPINOSA, el proceso pasa por un control de seguridad que requiere que cada persona que entra o sale de ese edificio firme un cuaderno, abogados, agentes policiales, familiares, letrados, investigadores, todos firman el mismo diario. Yo esta obligado y así firme el cuaderno diario cuando entre a ese edificio el día jueves 26 de Mayo de 2005 a las 3:00 Pm. Además para un abogado poder visitar a su cliente solicitado en extradición en las celdas del Bunker debe conseguir primero el permiso de la oficina de asuntos internacionales de la Fiscalia, debido a la mayor seguridad en ese lugar y a las personas que están alojadas allí, es un lugar con mayores puntos de seguridad y horarios de visitas mas restringidos. Yo recuerdo específicamente viajar a la Fiscalia para visitar a mi cliente el jueves 26 de Mayo de 2005 aproximadamente a las 8:00 A.m, consiguiendo la autorización para visitarlo tan solo a las 2:00 P.m, y logrando ingresar a visitar A SALARZAR ESPINOSA hasta las 3:00 de mayo 26 de 2005. Si hubiera tenido la oportunidad de reunirme con el mientras yo estaba esperando esa mañana cuando el se encontraba con los agentes de la DEA, o Antes, yo le habría aconsejado acorde con mi experiencia esperar y no hacer declaraciones a los agentes de los Estados Unidos, por lo menos hasta que tuviese la asesoria de una abogado de los Estados Unidos de América. ----------------------------------------------------------------------
---------------------- ---------------------.----------------------------------------------

**CUARTO:** El objeto de estas declaraciones es para Trámites ante **US DISTRICT COURT SOUTHERN DISTRICT OK NEW YORK – 500 PEARL STREET NEW YORK NEW YORK 1007.** ---------------------------------------------------------------------
-----------------------------------------------------------------------------------------
-----------------------------------------------------------------------------------------

LEIDA Por el Declarante la encontró correcta y de acuerdo a sus manifestaciones la aprobó y en constancia la firma en el Despacho de la Notaría, estas declaraciones las otorga en forma voluntaria, sin ninguna clase de presión y **BAJO LA GRAVEDAD DEL JURAMENTO,** por el sólo hecho de la firma.------------------
--------------------------------------------------------------------------------------------------------------------

A los diecinueve (19) días del mes de Noviembre del año 2010, **A SOLICITUD E INSISTENCIA DEL INTERESADO.**
EL (LA) DECLARANTE (S),
*Derechos notariales: $9.420 Iva: $1.510   Res. 10301 de 2009*

HUELLA DEL INDICE DERECHO

**DIEGO JAVIER ESPITIA PLAZA**
**C.C. No.** 19.48×419 852.

**CLAUDIA UMAÑA GUERRERO**
**NOTARIO TERCERO (E) DEL CÍRCULO DE BOGOTÁ, D. C.**

angela

## CERTIFICATE OF AFFIDAVIT No. 15786

**NOW COMES: DIEGO JAVIER ESPITIA PLAZA,** the bearer of citizenship card Number 19.487.418, Issued in Bogota, Capital-City District, being in the age of majority, his Marital Status being that of a married man and the current holder of marital community property, an Attorney by profession, the bearer of Professional Card No. 66789, issued by the Supreme Court of Justice, residing at carrera No 11 – 54 Of. Edificio de la Libertad Barrio Centro De la ciudad, Bogota D.C., TEL: 3214342519.--------------------------------------------------------------------------------
--------------------------------------------------------------------------------------------------------------------------------

who is executing this certificate for out-of-court purposes, as provided in Articles 1 and 141, Executive Decrees 1557 and 2282 of 1989, being admonished by me of the penalties set forth in Articles 266, 269 and 442, Criminal and Criminal Procedural Code, stating as follows for the record:------------------------------------------------------------------
--------------------------------------------------------------------------------------------------------------------------------

**ONE.** All statements given hereunder are made as solemnly sworn to.------------------------------------------------------------

**TWO.** He is legally competent in its entirety, being free and clear of any ban on giving any statements as requested or executing this certificate.----------------------------------------------------------------------------------------------------

**THIRD.** Upon being solemnly sworn, **I STATE:** Currently, I am an attorney at law, being licensed and authorized to serve as counselor at law in the Republic of Colombia, wherein I am domiciled. During the 2005 calendar year, I was also licensed to practice my profession of attorney at law in my country, Colombia. I know MANUEL SALAZAR ESPINOSA, and I represented him in Colombia in connection with the extradition proceedings initiated by the United States of America and directed to Colombia, his multiple-count indictment being pending with the S.D.N.Y. in 2005; I was available in 2005 to provide any information, legal advice or counsel with respect to any statement of Mister MANUEL SALAZAR ESPINOSA intended for any judicial authority of the UNITED STATES OF AMERICA, should he have requested it, and I have had the opportunity to do so when he was being held at the main facility of the Office of the Prosecutor General of the Nation, in Bogota, from May 23 thru May 26, 2005. To the best of my recollection, my client, MANUEL SALAZAR ESPINOSA, was confined from May 23 thru May 26, 2005 in Bogota, at the main facility of the Office of the Prosecutor General of the Nation, in a place commonly referred to as the "Bunker." In order for anyone to have the ability to enter the cells in which SALAZAR ESPINOSA was being held within the prosecutorial office in Bogota, there is a process which involves crossing through a security checkpoint at which every individual who enters or exits from that building is to sign a logbook; attorneys, law-enforcement officers, family, lawyers, investigators, all of them sign the same journal. I was under an obligation, and I thus signed the daily logbook when I entered that building on Thursday, May 26, 2005 at 3:00 PM. Further, in order for an attorney to visit a client who is under a request for extradition at any cells in the Bunker, he must first obtain permission from the Prosecutor General's office of international affairs due to higher security at such facility and the individuals who are housed therein; it is a facility with more security checkpoints and more restricted visiting hours. I remember specifically that I went to the Prosecutorial Office to visit my client on Thursday, May 26, 2005 at approximately 8:00 AM, obtaining permission to visit him only at 2:00 PM and succeeding in entering TO [sic] visit SALARZAR [sic] ESPINOSA as late as 3:00 on May 26, 2005. If I would have had the opportunity to meet with him while I was waiting that morning at the time he was with the DEA agents or Prior Thereto [sic], I would have advised him, based on my experience, to wait and not make any statements to US agents at least until such time as he would have the advice of an attorney from the United States of America.------------------------------------------------------
--------------------------------------------------------------------------------------------------------------------------------

**FOUR.** The purpose of these statements is for undergoing formalities with the **US DISTRICT COURT SOUTHERN DISTRICT OK [sic] OF NEW YORK – 500 PEARL STREET NEW YORK NEW YORK 1007 [sic].**--------------------------------------

------------------------------------------------------------------------------------------

------------------------------------------------------------------------------------------

THIS HAVING BEEN READ by Affiant, he found it correct and in accordance with his statements, consenting thereto and signing it for the record at the Notarial Office; he is giving these statements voluntarily, under no pressure whatsoever, and **AS SOLEMNLY SWORN TO,** as signified by his merely hereunto affixing his signature.------------------

------------------------------------------------------------------------------------------

On the nineteenth (19th) day of November, 2010, **AT THE REQUEST AND INSISTENCE OF THE INTERESTED PARTY. AFFIANT(S)**

*Notarial Fees: 9,420 Colombian Pesos. Value-Added Tax: 1,510 Colombian Pesos  Resolution 10301 of 2009*

[Fingerprint Imprinted]
Fingerprint of Right-Index Finger

/illegible signature/
**DIEGO JAVIER ESPITIA PLAZA**
**Citizenship Card No.** /Handwritten: 19.487418 Bta./

[illegible rubber seal]

/illegible signature/
**CLAUDIA UMANA GUERRERO**
**THIRD NOTARY (E)\* FOR THE CIRCUIT OF BOGOTA**


**\* Translator's Note:** Unknown abbreviation.

# EXHIBIT C

# EXHIBIT D



**FISCALIA**
GENERAL DE LA NACIÓN

0 1 27 8 2

DAI
Bogotá, D. C.          **1 7 DIC. 2008**

Doctor
**Pedro Nel Lerma Álvarez**
Abogado
Transversal 21 No. 96 – 42
Ciudad

Referencia:   Traslado derecho de petición.

Doctor Lerma:

De manera atenta me permito informarle que la petición suscrita por el señor Manuel Felipe Salazar Espinoza, por medio de la cual requiere copia del libro de visitas de la sala de capturados de estas instalaciones, con el fin de establecer que personas lo visitaron y entrevistaron el día 26 de mayo de 2005, fue trasladado por competencia a la Directora Nacional del cuerpo Técnico de Investigación.

Atentamente,

**Francisco Javier Echeverri Lara**
Director de Asuntos Internacionales

GGE

---

**DIRECCION DE ASUNTOS INTERNACIONALES**
Diagonal 22B (Av. Luis Carlos Galán) Nro. 52-01, Telefax : 5702000, 4149000, ext. 2563, 2564, 2560
y 2562. Bogotá D. C.,  República de Colombia





FISCALIA

Di. SSS L/ SP No 289

Bogotá DC. 22 de Diciembre de 2008

Doctor
**PEDRONEL LERMA ALVAREZ**
CC No. 19.461.511 de Bogota
T.P. 46070 CSJ

Referencia: **DERECHO DE PETICION DEL SEÑOR MANUEL FELIPE SALAZAR
ESPINOSA**

En atención a su escrito, recibido en esta oficina el 18 de Diciembre de 2008,
mediante el cual en ejercicio del derecho de petición solicita copias del libro de
minuta de guardia para las salas de paso del Bunker de la Fiscalía Nivel Central
con el fin de establecer que personas visitaron y se entrevistaron con el señor
Manuel Felipe Salazar Espinosa el día 26 de Mayo del año 2005, de manera
atenta me permito enviar a usted 06 copias fotostáticas; folios 331 al 336 en donde
aparece la información que usted requiere.

En estos términos doy respuesta a su derecho de petición.

Atentamente,

**EDWIN ALBERTO CHAGUENDO SOLER**
Escolta I  CTI Código 9588
Coordinador Salas de Paso Nivel Central
Fiscalía General de la Nación

SECCIÓN DE SEGURIDAD Y SOPORTE LOGÍSTICO
DIAGONAL 22B (Avda. Luis Carlos Galán) No. 52-01 BLOQUE C PISO 2 BOGOTA D.C.
CONMUTADOR: 5702000 Ext. 2253 FAX 2247
www.Fiscalia.gov.co

"LA SEGURIDAD ES ASUNTO DE TODOS"

**331**

| Consautia | fecha | Hora | Asunto | A N O T A C I O N E S |
|---|---|---|---|---|
| | | | | llave hasta el proximo dia, igual |
| | | | | mente los demás retenidos que dan en su celda bajo llave. |
| | | | | F/N. (firma) |
| 2075 | 25/05/05 | 23:40 | Revista | A retenidos y celdas s/N (firma) |
| 2076 | 26/05/05 | 01:15 | Revista | A retenidos y celdas s/N (firma) |
| 2077 | 26/05/05 | 03:00 | Revista | A retenidos y celdas s/N (firma) |
| 2078 | 26/05/05 | 04:45 | Revista | A retenidos y celdas s/N (firma) |
| 2079 | 26/05/05 | 05:30 | Revista | A retenidos y celdas s/N (firma) |
| 2080 | 26/05/05 | 0600 | Revista | A retenidos, se le habre sus respectivas celdas para que tomen su baño diario s/N. (firma) |
| 2081 | 26/05/05 | 07:00 | Entrego | Turno de seguridad de plata 4 al sr: Jarlis Alberto González con tres (03) retenidos quienes se encuentran en sus respectivas celdas sin ninguna novedad (Jairo Cabrera; Fernando Cadena y Manuel Salazar) entrego además (38) treinta y ocho llaves de celdas y demás elementos del puesto, todo sin ninguna novedad. Att: (firma) |
| 2082 | 26.05.05 | 07:00 | Recibo | puesto de seguridad en plata y con (03) tres retenidos y los escaños de puesto sin para el servicio s/N — a |
| 2083 | 26.05.05 | 07:05 | ingreso | del señor José Chacón con el 387 para los retenidos a el vehiculo conduciendo un blanco con placa UDφφ55 Todo sin s/N ___ 792172177  Bogotá |
| 2084 | 26.05.05 | 07:55 | ingreso | del señor Pedro Carlos Giménez con C.C 17.810.510 de Bogotá de concordada a cuarenta con las obras de concreto de la suma de mpco Todo SIN ___ s/N |

**332**

| Consecu | Fecha | Hora | Asunto | A N O T A C I O N E S | Consec |
|---|---|---|---|---|---|
| 2085 | 26.05.05 | 08:05 | Ingreso | del señor Felipe Nempeque c.c 16.749.162 de | — |
| | | | | carpintería a continuar con los trabajos de | |
| | | | | carpintería de la sala del IMPEC — _firma_ | |
| | | | | Felipe Nempeque cc 16 749 162. Cabo | |
| 2086 | 26.05.05 | 08:25 | Ingreso | del señor Robinson cortez cortez 47.394.152 | |
| 05 | | | | de Hidraulicas Lopez a continuar con los | |
| | | | | trabajos de la tubería de los baños de la | |
| | | | | sala del IMPEC S/N _firma_ — o — | |
| | | | | Robinson cortez | |
| 2087 | 26.05.05 | 09:10 | Ingreso | de la ingeniera Liliana Rojas Rojas c.c | |
| | | | | 52.156.973 de carpintería a revisar las | |
| | | | | obras / de los cables Todo.S/N _firma_ | 209 |
| | | | | _firma_ cc# 52156973 Bgla' — | |
| 2088 | 26.05.05 | 10:35 | Ingreso | a la hora y fecha ingresa el abogado | |
| | | | | Alexander Carvajal Aragon c.c 16264117 | |
| | | | | de Palmira (valle) y de igual manera se | |
| | | | | saca al retenido Fernando cadena Peña a | |
| | | | | entrevistarse con el Tdo Cae su autorización | |
| | | | | Tdo S/N _firma_ — o — | |
| | | | | _firma_ cc 16264813 P | |
| | | | | _firma_ Caviedes P. 16277207 P | |
| 2089 | 26.05.05 | 09:50 | Ingreso | a la hora y fecha ingresan 3 funcionarios | 2c |
| | | | | de la embajada de los Estados Unidos y 2 | |
| | | | | de la Fiscalía de estupefacientes a una | |
| | | | | entrevista con los detenidos Manuel Felipe | |
| | | | | Salazar y Fernando cadena Peña este | |
| | | | | procedimiento fue autorizado por el señor | |
| | | | | Gorgua Director del CTI y el señor Diego | 2c |
| | | | | Andres Poveda Jefe de seguridad instalaciones | |
| | | | | y funcionarios coordinado con el señor Javier | |
| | | | | Fernandez ellos son: Kelly shitivan Robinson | |
| | | | | IDT A 200711035 ; warren Douglas Lowe IDT 200742 | |
| | | | | Terrance c.c IDT D2002177 y Jairo | 2 |
| | | | | Enrique Rodriguez Becerra c.c 74600894 , | |

**333**

| | Consecutivo | Fecha | Hora | Asunto | A N O T A C I O N E S. |
|---|---|---|---|---|---|
| | — | — | — | Sigue | investigador Judicial II con 86827 |
| | | | | | Mauricio Nieto Rojas c.c 30813 |
| | | | | | 76. y la coordinadora de intenciones Adriana nueva Arango |
| | | | | | Galiego c.c 43282216 profesiones |
| | | | | | Universitaria III con 9804 de |
| | | | | | este procedimiento queda constancia Fisica de cargos por Todo |
| | | | | | lo demas SIN mas — con |
| | | | | | |
| | | | | | |
| | 2090 | 26 05 08 | 10:50 | Salida | N.N. — 16 3A/300 |
| | | | | | de señor abogado Alexander |
| | | | | | Cuervo Del Arango c.c 116264913 |
| | | | | | por Terminar la entrevista con |
| | | | | | el señor Fernando Cadena peña |
| | | | | | Todo SIN mas — en |
| | | | | | Fernando Cadena P. 16277207 Pol |
| | | | | | |
| | | | | | c.c 16264913 |
| | 2091 | 26 05 08 | 11:50 | ingreso | del señor Jose Luis Cubides c.c |
| | | | | | 93358 412 de Ibague de conocer con |
| | | | | | a realizar Trabajos de pintura |
| | | | | | en celdas con su respectiva cuadrilla |
| | | | | | Trabajo. Todo SIN mas — en |
| | | | | | 93.358414 |
| | 2092 | 26 05 08 | 13:05 | ingreso | del señor Jose Chacon con el 784 |
| | | | | | para los traslados en el vehiculo |
| | | | | | Chevrolet Luv blanca con placas |
| | | | | | VDO 055 Todo SIN mas |
| | | | | | F92472471. Bogota |
| | 2093 | 26 05 05 | 14:05 | ingreso | del abogado Alexander Cuervo Del |
| | | | | | Arango c.c 16264913 de primera (valle) |

**334**

| Transacción | fecha | Hora | Asunto | A N O T A C I O N E S | Constan |
|---|---|---|---|---|---|
| | | | Sale | a entrevistar con el señor Fernando | |
| | | | | entran con su respectiva Autorización | |
| | | | | Todo SIN _____ _____ | 2100 |
| | | | | Alexander Corredor     Fernando Cadena | |
| | | | | CC 16 264 813          16 277 207 | |
| 2094 | 26 05 05 | 14:05 | ingreso | de la ingeniera Liliana Rojas Rojas c.c | |
| | | | | 52 156 973 de Bogotá viene a revisar las obras | |
| | | | | de CELDA Todo SIN _____ _____ | |
| | | | | ___ Cc 52156973 BGrá | |
| 2095 | 26 05 05 | 14:12 | ingreso | de los señores de cubiertas acrilicas, Soler | 2101 |
| | | | | Juan carlos c.c 80 814 498 de Bogotá y | |
| | | | | Hugo marino c.c 79581670 de Bogotá a | |
| | | | | revisar la maquetacion de patio de celda | |
| | | | | ___ c.c 79581670        80 814 498 Bta | |
| 2096 | 26 05 05 | 14:58 | salida | del abogado Alexander carrera Aragos | 210 |
| | | | | c.c 16 264 913 de primera vuelta y de igual | |
| | | | | manera el señor Fernando cadena ingresa | |
| | | | | a su celda Todo SIN _____ _____ | |
| | | | | Fernando Cadena P 16 277 207 Pol | 210 |
| | | | | Alexander Corredor | |
| | | | | C.C 16 264 813 . | |
| 2097 | 26 05 05 | 15:15 | ingreso | de la ingeniera Liliana Rojas Rojas c.c | |
| | | | | 52 156 973 y el ingeniero John Jairo | |
| | | | | Novoa espejo c.c 79 574 174 a revisar | |
| | | | | un patio de Celdas Todo SIN _____ | |
| | | | | ___ 52156973 Btá ___ 79 574 174 | |
| 2098 | 26 05 05 | 15:17 | ingreso | del abogado Diego Javier Espitia plaza | 210 |
| | | | | c.c 19 482 418 De Bogotá a entrevistarse con | |
| | | | | el señor manuel Felipe suarez con | |
| | | | | su respectiva autorización Todo SIN | |
| | | | | ___ ___ ___ CC3418N | |
| 2099 | 26 05 05 | 15:45 | salida | del abogado Diego Javier espitia plaza | |
| | | | | c.c 19 482 418 de Bogotá por Terminar la | |
| | | | | entrevista con el señor manuel Felipe | |

**335**

| Consecutivo | Fecha | Hora | Asunto | A N O T A C I O N E S |
|---|---|---|---|---|
| | — | — | — | Sigue Salida Todo S/N Nros. |
| | | | | (e) - 1437/80... |
| | 2100 | 260505 | 16:15 | Salida de los Señores de cubiertas acrilicas. Juan carlos Soler C.C 80.814.498 y Hugo moreno 79.581... por Terminar la reparación de la maquina. Todo S/N |
| | | | | 80814498 Rta |
| | | | | 79581670 |
| | 2101 | 260505 | 17:50 | Ingreso del Señor José chacon con ci 78... para los retenidos en el vehiculo chevrolet Luv blanco con placa VDO 055 Todo S/N |
| | | | | 79271171 Bogota |
| | 2102 | 260505 | 17:50 | Salida del Señor José Luis Cubides cruz c.c 93.358.417 que se encontraba en lo Trabajos de pintura Todo S/N |
| | | | | 93358417 |
| | 2103 | 260505 | 19:00 | Ingreso En esta Fecha Siguen los señores de pintura Robin cortes cortes c.c 93.394.552 Felipe Vasquez c.c 16.749.162 y carlos pedro leal Garzon c.c 17.010.510 Por terminar Obras por el dia de hoy Todo S/N |
| | | | | Robin Cortes 93.394.152. |
| | | | | Felipe Vasquez S. c.c 16.749.162 cial |
| | 2104 | 260505 | 19:00 | Entrego arma y Fecha puesta de seguridad el Arma y el Señor Ricardo Bustos con 03 Tres detenidos Jairo cobos, Fernan cortes y manuel Felipe Vasquez y los siguientes elementos (02) dos computadores con sus respectivos accesorios, con Hardware, mouse (02) dos parlantes (02) un Televisor con Control Remoto, (01) radio Pro. 5150 con (02) Dos baterias |

**336**

| Consec. | Fecha | Hora | Asunto | ANOTACIONES | Cons |
|---|---|---|---|---|---|
| — | — | — | Sigue | y un cargador con adaptador, (01) un | 21 |
| | | | | Teléfono, (38) llaves de celdas (01) una | 21 |
| | | | | interna amarilla con cargador, (01) un | 21 |
| | | | | garrot, (01) un monitor de las cámaras | 21 |
| | | | | de celdas. Todos los elementos del | 21 |
| | | | | puesto se entrega físicamente y en | |
| | | | | buen estado y sin para el servicio. | 211 |
| | | | | Entrego Alberto González AGC — — | |
| 2105 | 260505 | 19:00 | Recibo | Puesto Plata 4 y con la anotación | |
| | | | | 2104 del folio 335 encontrándolos SIN | |
| | | | | Verificando elementos Ricardo | |
| 2106 | 260505 | 19:05 | Salida | del Sr. Manuel Felipe Salazar Espinosa | |
| | | | | para realizar una llamada SIN | |
| | | | | paga y marca al # 954343000 19 Total | |
| | | | | tiempo llamada x (1) MN 15.498? — | |
| | | | | y del Sr. Fernando Cadena Peña al # | |
| | | | | 072 2757767 fax 072 272 2846, | |
| | | | | 0053469007 9352. | |
| | | | | Fernando Cadena P 16277207 Pol. | |
| | | | | y el Sr. Jairo Franco Cabrera N. | |
| | | | | al # 052 226752 y 290431 0. | 21 |
| | | | | Franco A CC 983 91.20 pol | |
| 2107 | 260505 | 20:00 | Ingreso | de los Srs. retenidos a su respectiv | |
| | | | | uas celdas SIN y se le informa a | |
| | | | | Ricardo | 211 |
| 2108 | 260505 | 21:00 | Revista | a la hora de Celdas SIN Ricardo | |
| 2109 | 27/05/05 | 00:11 | Ingreso | la Unidad Aguilas 8 Victor Gómez a pasar | |
| | | | | revista a Plata IV Autorizado por el jefe de | |
| | | | | Seguridad S/N UMGA Cod 5938 — . — | 21 |
| 2110 | 27/05/05 | 00:13 | Sale | Aguila 8 7,82 con la revista de Plata IV Sin | |
| | | | | UMGA Cod 5938 — — — | |
| 2111 | 27 05 05 | 0?:05 | Revista | a la hora de Celdas SIN Ricardo | |
| 2112 | 270505 | 03:40 | Revista | a la hora de Celdas SIN R | |



Sección Gestión Documental

No. 20086111971872 - SA
Fecha Radicado: 2008-12-11 15:59:27
Anexos: 2F.

Señores
FISCALIA GENERAL DE LA NACION
Atn: DEPARTAMENTO DE ASUNTOS INTERNACIONALES
Ciudad.-

REFERENCIA: DERECHO DE PETICION DEL SEÑOR MANUEL FELIPE SALAZAR ESPINOSA

PEDRONEL LERMA ALVAREZ, identificado como aparece al pie de mi firma, en mi calidad de   Abogado con tarjeta profesional  No. 46070, acudo a ustedes para entregar por medio de presente documento el derecho de petición estructurado por el Señor MANUEL FELIPE SALAZAR desde su sitio de reclusión en los Estados Unidos de Norte América debidamente apostillado ante el notario público del estado de Florida, el Señor MANUEL FELIPE SALAZAR ESPINOSA, se identifica con la cédula de ciudadanía No. 16.341.800 y su número de referencia en la Federal detention Center  de Miami es 59264054.

La respuesta puede ser enviada al mencionado Señor a la dirección anotada en el texto que contiene su derecho de petición, o a la mía Transversal 21 No. 96-42 de Bogotá, que yo la haré llegar.

Agradezco su colaboración,

Cordialmente,

PEDRONEL LERMA ALVAREZ
C.C. No. 19.461.511 de Bogotá
T.P. 46070 C.S.J

Se anexan documentos.

A black and white copy of this document is not official



# State of Florida

### Department of State

# APOSTILLE

### (Convention de La Haye du 5 octobre 1961)

1. Country:   United States of America

   This public document

2. has been signed by   **Luz Stella Campuzano**

3. acting in the capacity of   **Notary Public of Florida**

4. bears the seal/stamp of   **Notary Public, State of Florida**

### Certified

5. at   **Tallahassee, Florida**

6. the   **Second day of December, A.D., 2008**

7. by   **Secretary of State, State of Florida**

8. No.   **2008-104805**

9. Seal/Stamp:



**This apostille is NULL and VOID if the date in Item 6 occurs before the execution date on the attached document.**

### 10. Signature:

Secretary of State

DSDE 99  (3/03)

The original document has a reflective line mark in paper. Hold at an angle to view when checking.



Señores

Fiscalía General de la Nación

Atención: Departamento de Asuntos Internacionales

Bogotá, Colombia

Ref: Derecho de Petición

De conformidad con lo establecido en la constitución Nacional y el código contencioso Administrativo, presento a usted **Derecho de Petición**, con el fin de conseguir la copia de los Folios del libro de registro visitas ó entradas a los separos ó calabozos del Bunker de esta Fiscalía del día 26 de Mayo del año 2005. Con el fin de establecer que personas particulares, funcionarios de policía o fiscalía de Colombia, así como, también funcionarios de la DEA que hayan intervenido o no en mi detención me visitaron o entrevistaron en el día mencionado. Suscribo el presente documento como ciudadano Colombiano, que estuve detenido en ese lugar desde el 24 de Mayo del 2005 con fines de extradición. La información solicitada resulta fundamental en mi defensa.

Como ciudadano en plenitud de todas mis facultades e identificado plenamente como aparece en este documento y al pie de mi firma, elevo esta solicitud para ser presentada en mi defensa. Considero importante hacer llegar la información requerida con el fin de garantizar o colaborar con las expectativas de mi defensa en los Estado Unidos de América.

La respuesta a mi derecho de petición puede ser enviada a la siguiente dirección:

MANUEL FELIPE SALAZAR ESPINOSA
Ref: 59264054
FDC MIAMI
Federal Detention Center
P.O. BOX 019120
Miami, FL 33101

En espera de una pronta repuesta me suscribo de ustedes, cordialmente

Manuel Felipe Salazar Es

C.C. 16.341.800 de Tulúa, Valle del Cauca.

State of Florida
County of Miami Dade
Sworn to and subscribed before me
this 24 day of Nov 2008
By Manuel Felipe Salazar Espinosa
C.C
Produced Indentification
Type of ID 16.341.800 Tulua
Notary

Luz Stella Campuzano
Expires
12/17/2011
NOTARY PUBLIC
Commission #
DD713208
STATE OF FLORIDA

# EXHIBIT E

**Notification of Extraterritorial Rights**

**Dated:  May 23, 2005**

## NOTIFICACIÓN EXTRATERRITORIAL DE DERECHOS

Somos representantes del gobierno de los Estados Unidos.  De acuerdo con nuestra legislación, usted tiene ciertos derechos.  Antes de que le hagamos cualquier pregunta, queremos cerciorarnos de que usted entiende esos derechos.

Tiene usted el derecho de guardar silencio.  No tiene que hablar con nosotros ni contestar las preguntas que se le formulen.  Aún si usted ya ha hablado con las autoridades _____, no tiene que hablar con nosotros.

Si usted decide no hablar con nosotros, el que usted ha rehusado contestar nuestras preguntas no podrá ser usado en su contra ante un tribunal de los Estados Unidos.

Si usted accede a hablar con nosotros, cualquier cosa que diga podrá ser usada en su contra ante un tribunal de los Estados Unidos o el de otro lugar.

Conforme a la legislación estadounidense, usted tiene el derecho de consultar con abogado antes de que le hagamos alguna pregunta, y tiene derecho de asistencia de abogado durante la entrevista.  Si usted estuviera en los Estados Unidos y si usted no pudiera pagar abogado, se le nombraría a uno de oficio si así usted lo desea, antes de o durante nuestra entrevista.

Sin embargo, porque usted no está bajo nuestra custodia y no estamos en los Estados Unidos, no podemos asegurar que se le permita acceso a un abogado, o que se le nombre a uno de oficio, antes de o durante nuestra entrevista.

Si usted desea asistencia de abogado, solicitaremos a las autoridades locales que le permitan tener acceso a uno o, si usted no puede pagar abogado, que le nombren uno de oficio.  Si las autoridades locales están de acuerdo, usted puede consultar con el abogado antes de que le hagamos preguntas, y puede valerse de la asistencia del abogado durante la entrevista.  Si usted desea asistencia de abogado, pero las autoridades locales no le permiten acceso a abogado o rehúsan nombrarle a uno de oficio, entonces usted todavía tiene derecho de no hablar con nosotros.

Si usted decide hablar con nosotros en este momento, sin asistencia de abogado, usted tiene el derecho de dejar de contestar las preguntas en cualquier momento.


Yo he leído la presente notificación de mis derechos y entiendo cuáles son mis derechos.  Estoy dispuesto de prestar una declaración y contestar preguntas.  No quiero asistencia de abogado en este momento.  Yo comprendo y yo sé lo que estoy haciendo.  Renuncio a mis derechos de manera voluntaria.  No se me ha hecho ninguna promesa ni amenaza, y no se ha utilizado ningún apremio o coacción en mi contra.

_____

23-Mayo 2005

Oscar F. Salazar

SA Wm Duepos

SA Terry Cuello

# EXHIBIT F

Exhibit "B"

Notification of Extraterritorial Rights

Dated:   May 26, 2005

MAY-18-2007  11:21

P.03

# NOTIFICACIÓN EXTRATERRITORIAL DE DERECHOS

Somos representantes del gobierno de los Estados Unidos.  De acuerdo con nuestra legislación, usted tiene ciertos derechos.  Antes de que le hagamos cualquier pregunta, queremos cerciorarnos de que usted entiende esos derechos.

Tiene usted el derecho de guardar silencio.  No tiene que hablar con nosotros ni contestar las preguntas que se le formulen.  Aún si usted ya ha hablado con las autoridades _____, no tiene que hablar con nosotros.

Si usted decide no hablar con nosotros, el que usted ha rehusado contestar nuestras preguntas no podrá ser usado en su contra ante un tribunal de los Estados Unidos.

Si usted accede a hablar con nosotros, cualquier cosa que diga podrá ser usada en su contra ante un tribunal de los Estados Unidos o el de otro lugar.

Conforme a la legislación estadounidense, usted tiene el derecho de consultar con abogado antes de que le hagamos alguna pregunta, y tiene derecho de asistencia de abogado durante la entrevista.  Si usted estuviera en los Estados Unidos y si usted no pudiera pagar abogado, se le nombraría a uno de oficio si así usted lo desea, antes de o durante nuestra entrevista.

Sin embargo, porque usted no está bajo nuestra custodia y no estamos en los Estados Unidos, no podemos asegurar que se le permita acceso a un abogado, o que se le nombre a uno de oficio, antes de o durante nuestra entrevista.

Si usted desea asistencia de abogado, solicitaremos a las autoridades locales que le permitan tener acceso a uno lo, si usted no puede pagar abogado, que le nombren uno de oficio.  Si las autoridades locales están de acuerdo, usted puede consultar con el abogado antes de que le hagamos preguntas, y puede valerse de la asistencia del abogado durante la entrevista.  Si usted desea asistencia de abogado, pero las autoridades locales no le permiten acceso a abogado o rehúsan nombrarle a uno de oficio, entonces usted todavía tiene derecho de no hablar con nosotros.

Si usted decide hablar con nosotros en este momento, sin asistencia de abogado, usted tiene el derecho de dejar de contestar las preguntas en cualquier momento.

Yo he leído la presente notificación de mis derechos y entiendo cuáles son mis derechos.  Estoy dispuesto de prestar una declaración y contestar preguntas.  No quiero asistencia de abogado en este momento.  Yo comprendo y yo sé lo que estoy haciendo.  Renuncio a mis derechos de manera voluntaria.  No se me ha hecho ninguna promesa ni amenaza, y no se ha utilizado ningún apremio o coacción en mi contra.

23-MAYO 2005

TOTAL P.03

# EXHIBIT G

January 8. 2007

Lawrence M. Herrmann, Esq.
37-51 76th Street
Jackson Heights NY  11372

RE: U.S. V. Manuel Felipe Salazar
05 Cr. 00517

Dear Herrmann,
I am writing this letter to you,
in regard to my pretrial suppression motion accomplishment;
I am respectfully requesting these following specific document
under Title 18 U.S,C § 2518 (8)(d) and 9, 10(a).

(1) The application for wire communication interception.
(2) The affidavit in support of the application.
(3) Order for wire communication interception.
(4) Order to service provider.
(5) Application for trap and trace or pen register.
(6) Order for instalation of pen register.
(7) The application for sealing wire tap.
(8) order to serve wire tap.
(9) Minimization instruction.
(10) The application for disclosure of wire tap evidence.
(11) Order to disclose evidence.
(12) The application for inventory notice.
(13) Order fro inventory.
(14) The progress reports day's by day's.
(15) Transcript of wire tap.
(16) All wire tap or CD roms.
(17) The monitoring agent memo log.

Without these 17 specific type of document, it's will
be impossible to file a successful suppression motion; for these
reason i am requesting your assistance to serve me with these
17 document as discovery, with any other discovery, and for
all target telephone in this case.

I will greatly appreciate your assistance, thank you
for your time.

Respectfully Submitted,


Manuel-Felipe Salazar
Reg# 59264-054
M.C.C. New York

# EXHIBIT H

# Lawrence M. Herrmann

Attorney at Law
37-51 76ᵗʰ Street
Jackson Heights, New York 11372
Tel. (718) 779-6630
Fax (718) 565-7278

MEMBER
N.Y. AND CT BAR

CT Juris No. 303368

January 10, 2007

Hon. Lewis A. Kaplan
U.S. District Judge
U.S. District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   U.S. v. Manuel Felipe Salazar Espinosa
> S3-05 Cr. 517 (LAK)

Dear Judge Kaplan:

I hereby request an adjournment of the trial date to late April or May. I also request a concomitant extension of your deadline for the possibility of a full 3 point acceptance of responsibility to late February. I do so, without objection from the U.S. Attorney, by Assistant U.S. Attorney Eric J. Snyder, and have spoken with counsel for co-defendant Ardila, Joaquin G. Perez, who consents to the requested extension and adjournment. Defendant Salazar does not wish to go to trial.

The reasons for my request are two-fold, one strategic and one personal. First the strategic. I was unable to distinguish voices on the CD's provided as discovery. Given the limitations on prisoners listening to CD's for more than one or two hours a week, I requested a summary, yet to be received, from defendant's son. Yesterday, Jan. 9, I met with Assistant U.S. Attorney Eric Snyder and Assistant U.S. Attorney Anirudh Bansal who provided me with a large stack of trial-ready transcripts of recordings, all in English and Spanish, which will now permit me to review the case in depth with my client and consider the plea offer I have now received, which involves a substantial minimum.

Further, I would have to complete my review by Jan. 18, as I will be out of the country visiting clients awaiting extradition to the U.S., as did Mr. Salazar, several sought in the Southern or Eastern District of New York. I had to re-schedule much of a previous trip, due to my wife's severe surgical complications.

On the personal side, I have been married to my wife Eleanor for 38 years, a tribute to her patience and understanding. She is a Doctorally prepared Nurse-Historian who taught at, inter alia, Syracuse, Cornell and Yale and retired from the University of Connecticut. She is a great teacher but the most obstinate and difficult sort of patient.

In October 2006 she was in remission from four prior cancer surgeries, cervical and bladder, when a large mass was discovered in her colon. On Dec. 1, 2006 at Yale New Haven Hospital, a colon resection was performed and a large carcinoma removed, which thankfully was encapsulated. As with her prior hip replacement surgery, she did not handle the pain killers well, pulled her I.V.s and was restrained in the hallway of the hospital trying to walk home in a gown.

The recovery was further complicated by an infection of the 14 inch abdominal wound which had to be cut open in mid December and is still attached to a 20 lb. wound vacuum machine. I essentially have been out of commission until this week, trying to help as best I could at home.

The circumstances have left me six more working days to work out a plea before my trip. In fairness to me to permit me to do my job correctly and thoroughly and to permit Mr. Salazar, who does not wish a trial, to absorb and comprehend the restrictions of an offer with a minimum of some 262 months, I believe the interests of justice would best be served by an extension of the plea deadline.

Respectfully yours,

Lawrence M. Herrmann

cc:    Hon. Jaime Buenahora Febres-Cordero,
       Consul General of Colombia
       AUSA Eric J. Snyder
       AUSA Anirudh Bansal
       Joaquin G. Perez, Esq.
       Manuel Felipe Salazar

# EXHIBIT I

Manuel Felipe Salazar Espinosa
Reg# 59264-054
M.C.C.-New York
150 Park Row
New York,      NY    10007

February 15, 2007

Larry Hermann, Esq.
37-51 76th Street
Jackson Heights,   NY   11372

Re: U.S. V. Manuel Felipe Salazar
S2 05Crim.517

Dear Hermann,

I am writing you this letter by requesting for two facts,
in regard both indictment against me and about my discovery.


(1). I'm requesting you to file a motion for transfer of the
indictment N. 05 Crim.20307 Grahom which was file on April 12, 2005,
at S.D. of Florida; to Southern District of New York, 500 Pearl Street,
under Rule 20 (a) of Federal R.crim.P..


(2). I'm also requesting you to send me all my extradition
documents photocopy, including any other document that the Southern
District Court of New York have against me as evidenciary discovery,
before any hearing or Court decision.


In this matter i will greatly appreciate your assistence
thank you for your time.


Respectfully Submitted,


Manuel Felipe Salazar

# EXHIBIT J

Manuel Felipe Salazar
REG.# 59264-054
M.C.C.- New York
150 Park Row
New York,   NY  10007

February, 16, 2007

Larry Hermann, Esq.
37-51 76th Street
Jackson Heights,  NY  11372

Re: U.S. V. Marra- Seltzer
    CIVIL Case N. 05-61780

Dear Hermann,

        I am writing you this letter in regard to the civil
forfeiture action claim that the assistant United States attorney,
Alison W. Lehr of Southern District of Florida has filed against my
family member; and sent me the copy of those file through you. In
family member; and sent me the copy of those file through you. In
in rem to seize their property with deposit refunds fees.

        Defendant stating that the Government forfeiture claim in
this case is unlawful act and it's must be dismiss, because those
family member never been invoved in any criminal activity or being
arrested for any crime; and those property never been use for any
criminal matter to be seized as incident material to be forfeiture
property. And Mr.Salazar declare that he never gave any criminal
money to any of his children or family member to purchase any of those
property.

        The purpose of searches or seizures under United States
constitutional of 4th amendment, that no defendant have standing to
challenge searchs or seizures of property that is not registered on
their name, or property that never been used by them to commit crime.
see U.S. V. Shareef, 100 F.3d 1491.

        For these reason the Goverment forfeiture claim against
Mr.Salazar family property, by using the arrest of Mr.Salazar are
unlawful; because any of those property is aregistered on Mr.Salazar
name, and they should not be incriminated by any how to be seized or
calls as frofeited. Not one of those property was obtain from any
exchange of any narcotic controlled substance as it is provided by
Title 18 U.S.C. § 881 (a)(6).

        For all these reason Mr.Salazar requesting that the
Government claim be dismissed, and he will greatly appreciate your
assistance thank you for your time.

                                    Respectfully Submitted,


                                    _____
                                    Manuel Felipe Salazar

# EXHIBIT K

March 12, 2007

Larry Herrmann
Attorney at Law
37-51 76th Street
Jackson Heights,  NY  11372

Re: U.S. v. Manuel Felipe Salazar Espinosa
S2 05 Cr. 517

Dear Atty:

I'am writing you this letter by requesting you to reviewed all aspect of the Government evidence and they requirements, and to file the suppression.

I'am claiming that the Government wire or oral communication which was intercepted in Mexico, on April 29, 2005 and on May 16,2005 by they confidential source; was wrongfully intercepted the Title 18 U.S.C section 2511 prohibits the willful interception of communications and the willful disclosure of the contens of communications wrongfully intercepted. The entire basis for the evidentiary rule of exclusion found in 18 U.S.C. Section 2515.

The oral, wire, or electronic communication interception under title 18 U.S.C. section 2511 (2) (d) or section 2511 (2)(c) do not apply to foreign country's communication evidentiary statutory requirement's.

Those taps recording took place outside the territorial jurisdiction of the United States, and the defendant communication with the D.E.A. agents confidential source also never had been transferred outside the territorial jurisdiction of the Mexico states where the interception took place. The Government evidence was not obtain in good faith it's was done in violation of the laws of both the United States and Mexico States.

The words actually chosen by congress and codified in 18 U.S.C. section 2510 to 2520 do not support the U.S.A patriot act expanded District Court and States Court, authority to issue out-of-District warrants or to seize out-of-District property for any other type of criminal case except in case of domestic terrorism or inter-national terrorism. see in re search warrant 362 F.supp.2d 1298 (M.D. FLA.2003.).

The oral communication which was intercepted out side the teritorial jurisdiction of U.S.A, and the U.S.A should not use those communication as evidence because it's was unlawfully intercepted.

For these reason I'am respectfully requesting you file suppression motion to stop the Goverment from using any unlawful evidence against me in this matter I will greatly appreciate your assistance, and I thank you for your times.

Date; March 12-2007

Respectfully Submit,

Reg # 59264-054
M.C.C.-New York.

Manuel Felipe Salazar Espinosa

# EXHIBIT L

09/30/2007  10:12    7185657278          L. M. HERRMANN          PAGE  02

MEMO ENDORSED

```
┌─────────────────────────┐
│ USDS SDNY               │
│ DOCUMENT                │
│ ELECTRONICALLY FILED    │
│ DOC #: _____  │
│ DATE FILED: 4/2/07      │
└─────────────────────────┘
```

*Lawrence M. Herrmann*

Attorney at Law
37-51 76th Street
Jackson Heights, New York 11372
Tel. (718) 779-6630
Fax (718) 565-7278

MEMBER
N.Y. AND CT BAR

CT Juris No. 303368

March 30, 2007

Hon. Lewis A. Kaplan
U.S. District Judge
U.S. District Court
Southern District of New York
500 Pearl Street
New York, New York 10007



     Re:   U.S. v. Manuel Felipe Salazar Espinosa
             S3-05 Cr. 517 (LAK)

Dear Judge Kaplan:

I hereby request a two week adjournment of the trial date to May 7, 2007. I do so, without objection from the U.S. Attorney, by Assistant U.S. Attorneys Eric J. Snyder and Anjan Sahni.

The reasons for my request are as follows: Despite Mr. Salazar's professed intentions to dispose of his New York and Miami cases without trial, the impact of the written plea agreement, and even a plea of guilty with a Pimentel letter, has been difficult for him to absorb, given his age in the mid-fifties. He cancelled a court date for change of plea and has been consulting with a number of out of state and local attorneys. He has also drafted or requested motions I have been unwilling to file as counsel. I have visited him repeatedly, but he still has not decided what course of action to take, to go to trial or seek a more favorable disposition through new counsel.

I believe it is highly likely he will seek to change attornies. A two week continuance of the trial date could permit possible disposition or allow a new attorney to prepare for trial with whatever assistance I can provide. The Government estimates a three day trial. I believe brevity is in the best interest of the Defendant.

Further, I had planned to be out of the country visiting clients awaiting extradition to the U.S., with co-counsel from New York and Colombia, leaving April 13 and returning April 23, having assumed there would be no trial in the instant case.

./30/2007  10:12     7185657279          L. M. HERRMANN

## *Lawrence M. Herrmann*
### Attorney at Law

I believe the interests of justice would be served by a continuance.

Respectfully yours,

Lawrence M. Herrmann

cc:     Hon. Jaime Buenahora Febres-Cordero
        Cónsul General of Colombia
        AUSA Eric J. Snyder
        AUSA Anirudh Bansal
        AUSA Anjan Sahni
        Manuel Felipe Salazar.

SO ORDERED

LEWIS A. KAPLAN, USDJ

4/30/07

# EXHIBIT M

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Case Nos.   **10-CV-_____**
05-CR-00517-Kaplan

Plaintiff/Respondent,

v.

MANUEL SALAZAR-ESPINOSA,

Defendant/Movant.

_____/

## AFFIDAVIT OF MANUEL SALAZAR-ESPINOSA
## IN SUPPORT OF SECTION 2255 PETITION

I, Manual Salazar-Espinoza, provide this affidavit in support of my motion to vacate sentence filed pursuant to 28 U.S.C. § 2255 and state:

1.     I truly believe that I received ineffective assistance of counsel that prevented me from having the opportunity for both a fair trial and to prepare for a fair trial.

2.     My complaints have to do with the representation that I received from the time that I was arrested in Colombia through my trial.

3.     I also complain that the government prevented me from having the full benefit my Fifth Amendment right and right to effective assistance of counsel in my United States prosecutions because, beyond my problems with Mr. Herrmann, the United States government prevented me from having the opportunity to meet with counsel after I was arrested in Colombia on May 23, 2005 and when my Colombian counsel came to visit me while I was in custody and being questioned by DEA agents on May 26, 2005.

4.     To the best of my knowledge, the Drug Enforcement Administration works hand in hand with Colombian law enforcement agents and they were working hand in hand at the time of my initial arrest.  It looked to me that the Colombian police were working for the DEA at the time I was arrested in Cali, Colombia and taken for questioning and when I

was later taken the following day to the office of the prosecutor, commonly referred to as to the Bunker, in Bogotá Colombia.

5.     When I was first arrested in Colombian, the arrest was made jointly by Colombian police officers who were accompanied by two DEA agents who took me into custody when I got off an airplane in Cali on May 23, 2005. I spent the night in jail in Cali, Colombia and the next day was taken to Bogotá, Colombia on an American plane accompanied by both Colombian and DEA agents. Although I speak almost no English, from what I understood in Spanish it appeared to me that the Colombian police were taking orders from the Americans.

6.     At the time that I provided the first statement in Colombia, I had no understanding of American law. Normally, in Colombia, when a statement is provided, the person giving the statement has the opportunity to review the statement and place his fingerprint if the statement properly describes what he said. I asked the DEA agent about that opportunity on May 23, 2005. He told me that, not to worry, that he was recording my statement and that I would be able to review it later and accept or deny it. I never had that opportunity.

7.     If I knew that my attorney, Diego Javier Espitia Plaza, was trying to see me on May 26, 2005, I never would have provided any additional statement to law enforcement agents from the United States until and unless I had the opportunity to meet with him and he told me that it was in my best interest to give a statement. I was effectively prevented from receiving the benefit of counsel because although my jailers let the DEA agents in to see me on the morning of May 26, 2005, but they did not let my attorney do the same until after I had given a full statement.

8.     I never would have given that statement unless my attorney advised me to do so. I do believe that both the United States and Colombia, because Colombian agents were

2

present while I gave my statement on May 26, 2005, combined to deprive me of my right to counsel at the most important time in my case, while they were asking me to give a confession or statement.

9.     I did want to meet with my Colombian lawyers while I was being interrogated by United States agents of the Drug Enforcement Administration in May of 2005 and was not permitted to do so when and as I requested.

10.    Together the United States and Colombian agents decided not to let my lawyer visit with me, May 26, 2005, as he requested, while I was in custody and when he came to see me at the Fiscalia in Bogota, Colombia.

11.    I never really had the benefit of receiving the assistance of defense counsel from the time that Larry Herrmann first entered his appearance in my case in April of 2006. Not withstanding any thing I told him about my case, Mr. Herrmann would only tell me to plead guilty and cooperate.  I refused to do either and you provided me with no other advice.

12.    By the time that Linda George entered her appearance, because no work was done to prepare for trial and no motions were filed to protect my constitutional rights, it was simply too late for me to get a fair trial.  I knew I needed to get a lawyer who would listen to me and do something to prepare for trial.  Herrmann did not and would not.

13.    I consistently asked my attorney Mr. Herrmann from the time I hired him to just before he left my case, to try and keep any statements I made in Colombia out-of-court and keep outside of the trial all statements which the agents said I made.  But he refused to do so. Even though I told him what happened about my lawyer not been permitted to meet with me, he did not investigate what I told him about the background of my custody and statements.

14.    It is true that I could not decide whether I would be pleading guilty or going to

trial for a long period of time after I was taken to the United States.

15.    But in all my conversations with Mr. Herrmann and the letters I wrote to him I told him that I wanted him to prepare for trial and I wanted him to be prepared to fight and do everything that was possible or necessary to protect my rights until I made a final decision. He did not do so. I believe he did nothing.

16.    After we spoke about my interviews in Colombia by the DEA, I also told him that I wanted him to do what was necessary to investigate what I told him about my Colombian lawyer who was kept from me, that the DEA seemed to have the run of the jail, and that something should be done about the fact that I was refused the right to speak to that lawyer. With guidance from other inmates, I knew that Mr. Herrmann could prepare to file motions to keep out that evidence out of my case.

17.    I also explained to him that I signed the necessary paperwork while jailed in Bogota that was required so that the Colombian attorney could be authorized to see me.

18.    I told Mr. Hermann the name of that lawyer and I asked him to reach out to speak to him about my case. I don't believe that he even did any of that while he was representing me.

19.    Mr. Hermann, to the best of my knowledge, never did anything to get ready for my trial or to investigate what I said about the taking of my statements.

20.    Mr. Hermann asked me to plead guilty on many occasions. I told him that I was not ready to do so and that he should get me ready for trial.

21.    I never authorized Mr. Herman to tell the prosecutor or the Court that I accepted any written or oral plea offer.

22.    I was generally unfamiliar with the United States system of justice after my arrest but while I was jailed and in speaking to other inmates I knew that I had the chance to attack certain evidence and asked Mr. Hermann to do that on my behalf.

23.     When he came to visit me in the jail, for the most part, Mr. Hermann never spent more than 10 or 15 minutes with me.  He would go from client to client at the jail and tell me that everything was going to be okay and that he was expecting to get some type of written plea agreement from the Government at some point in time.  He told me that once he received a written plea agreement we would review it.

24.     What I did know about the American system of justice and what I learned from other inmates I was jailed with was that my lawyer had to file certain paperwork by a certain time or you cannot do so.  I told him to do so each time we met.  I told him that in response to what he told me about my confession,  how tough that made my case, and that I had no choice but to plead guilty.

25.     When we met, I told Mr. Herrmann to make sure that he filed whatever we could file to protect my interests, including motions to keep out evidence, before the deadlines.  He told me he would do so.  But I do remember that some point in time at 2007 he told me that it was too late and repeated that I would have to plead guilty and that I really had no choice.  But I was not ready to plead guilty and wanted to do more work on my case.

26.     I did not understand why he told me to plead and why he did not file any pretrial motions to protect my rights to challenge the evidence.

27.     When we were in court in November of 2006, Mr. Herrmann did tell the judge that I had not yet reached an agreement and because I had not yet reached an agreement with the government he told the judge that he knew that he had to prepare my case for trial. I never changed from that position except to say that I would not accept what I understood to be the Government's offer of a guideline range with 20 years or more.

28.     I don't know if Mr. Hermann actually mailed a letter to the prosecutor about seeking to keep out the statements attributed to me by the DEA.  At the time he represented me, I didn't think he ever filed a motion to suppress evidence nor did he seek to extend the

time to do so. I really don't remember that he did anything to prepare. I now understand that he never did. He told me he received a summary of the statements the government said I made but never gave me a copy of the actual statements.

29.    I do recall that sometime around February or March of 2007 Mr. Herrmann presented me with a plea agreement document that was prepared by the government. I rejected it and told him that I had no intentions of pleading guilty under such an agreement and intended to go to trial.

30.    It was clear to me that Mr. Herrmann's only concern was that I plead guilty, that the case be over with, and that he could go on to something else.

31.    On the other hand, I made clear to him I wanted to go to trial and did not want to plead guilty unless it would be to a much lower sentence.

32.    When we discussed the possibility of some kind of disposition or guilty plea, Mr. Hermann told me that I would have to also agree to some type of forfeiture. I recall writing him a letter and telling him that I would not do so and I would not agree with the forfeiture claim by the United States. I also remember sending to Mr. Herrmann, after I rejected the plea agreement, some motions that I wanted him to file on my behalf. I know that he did not want to file any motions on my behalf. He refused to talk to me about filing any motions.

33.    From the very beginning of my case when I came to the United States, it was very difficult for me to get Mr. Hermann to give me any of the discovery evidence so that I could help to prepare the case for trial. I told Herrmann that I was done with my part of the drug business when the cocaine went from Columbia to Panama long before I was arrested in May of 2005 and was not part of any other conspiracy to bring the drugs to the United States.

34.    I do understand Mr. Herrmann was suffering from very difficult family

circumstances and dealing with very serious medical problems suffered by his wife at the same time he was required to help me prepare for trial.

35.     I later learned that Mr. Herrmann had sent a letter to the Court asking to withdraw from the case and gave reasons including the fact that we disagreed.

36.     What was true is that we did disagree. What was untrue is when he said I did not understand my situation. I did understand my situation. I wanted to fight my case. Mr. Hermann wouldn't help me do so.

37.     If the government was offering me more than 20 years in jail for a guilty plea, I wanted to take my chances to go to trial.   That was my intention. I also wanted him to do the best he could do. He refused to help me.

38.     My son was murdered shortly after my arrest and I could not cooperate. He wanted me to cooperate and I could not.

39.     When we went to court in April of 2007 and Mr. Herrmann wanted to withdraw from my case, I recall that he told the judge that "I couldn't understand him" that "I denied my guilt," and that he thought I was guilty.

40.     I cannot imagine in the United States that a lawyer could speak that way about his client in front of a judge who had yet to try him on his case.

41.     It was always my thought that a lawyer for a criminal defendant had a duty to try and protect him, to speak in his best interests, and not to say something that would hurt him.

42.     Mr. Herrmann's statements to the judge that he knew people over the years that he had represented that would testify against me or he knew that I was a drug dealer or that I could not or would not accept my guilt---all that seemed to be against what a lawyer should say or do.

43.     Although Linda George came into my case at the very last minute and tried

7

the case as best she could, there is absolutely no way that she could have prepared the same way had she started on my case the same time that Mr. Herrmann did in April the preceding year.  She had so little time to prepare.

44.    I know that Linda George tried to file a motion to suppress the statements used against me at trial.  I also know that the court refused to consider what she filed because the motion was filed to late.

45.    I do believe that I had no lawyer at all in the United States from the time that I was arrested in Colombia until the time that Linda George came into my case.  While in Colombia, the United States kept me away from a Colombian lawyer when I needed him the most, while I was being questioned, on May 26, 2005.

46.    Even though Linda George entered her appearance in my case and tried my case, the court refused to give her any more than a very short time to prepare.  She expressed reluctance to take my case given the fact that the court was only going to give her a few weeks but later gave her somewhat more time to prepare.  I don't think she received enough time and I think I have the right to expect the court to allow me an attorney who can dedicate enough time to prepare for trial, given that Mr. Herrmann did nothing.

47.    When I came to the United States, I had a lawyer who only considered what was convenient for him, what he wanted to do, and who completely disregarded what I wanted to do.  At least that was the case until the week before I was scheduled for trial.

48.    In Colombia, an inmate has to execute a "poder" before he can be visited by Colombian defense counsel.  A poder requests and authorizes a Colombian criminal defense lawyer to visit with a jailed Colombian.  I recall signing a poder requesting and authorizing Diego Javier Espitia Plaza to visit with me before the DEA agents interviewed me on May 26, 2005.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Manuel Felipe Salazar-Espinosa
Reg. No. 59264-054
FCI Jesup
2680 301 South
Jesup, GA 31599

STATE OF Georgia:

                   :ss

COUNTY OF _____:

       The foregoing instrument was acknowledged before me this _____ day of _____, 2010, by _____, who has produced Federal Correctional Institution – Jesup, Georgia, inmate Card #_____, as identification and who is not personally known by me.

_____
NOTARY PUBLIC – State of Georgia

_____
(Notary Public Printed Name)

# EXHIBIT N

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     Plaintiff,

       v.

MANUEL F. SALAZAR ESPINOSA,

     Defendant.

05CR 517(LAK)

## DEFENDANT'S MOTION TO PRECLUDE ADMISSION OF DEFENDANT'S POST-ARREST STATEMENTS

TO:    Clerk of the Court
       United States District Court
        for the Southern District of New York
       500 Pearl Street
       New York, New York   10007

**PLEASE TAKE NOTICE** that Manuel Salazar Espinosa, ("Salazar/Defendant"), by and through his attorney, Linda George, moves this court to enter an order suppressing post-arrest statements allegedly made by Salazar *without the presence of counsel* on May 23, 24 and 26, 2005 in light of very recent government revelations.

By letter dated April 20, 2007, the defense requested that the government produce information concerning defendant's post-arrest statements.  It was not until June 7, 2007, by letter, **Exhibit A**, that the government first advised counsel that on May 25 and May 26, 2005, an attorney, Diego Javier Espita-Plaza, visited defendant in prison.

Further embedded in the government's June 7, 2007 letter is the clear inference that Mr.

-1-

Salazar requested counsel from foreign authorities but because United States authorities were not advised of this request it was without "'any cognizable legal effect under American law or the Sixth Amendment thereunder.'" **Exhibit A**, (citing *United States v. Yousef*, 327 F.3d 56, 141 (2d Cir. 2003)).

Defendant urges that the substance of the above revelations brings into serious question the admissibility of his post-arrest statements. A fair inference can be drawn from the June 7th letter, that defendant did, in fact, have counsel during the period of time he was allegedly providing statements to the government without promises of immunity, promises of leniency, promises or assurances of any kind--all without entitled legal protection and without the presence of counsel. Defendant did, in fact, request counsel. Yet, his post-arrest statements were collected by DEA agents without counsel.

According to the government's legal argument, which defendant does not adopt, the admissibility of Salazar's post-arrest statements appears to hinge on the question of when a Colombian official communicated to a member of the DEA that Salazar had requested an attorney. *See* **Exhibit A**. Was it "this week" as the government now, on the eve of trial, contends, *id.*, or a time contemporaneous to the event itself, two years ago?

The defense investigation shows that Salazar was arrested on May 23, 2005 and brought to the office of the *Fiscalia*[1] in Cali, Colombia. Salazar was then taken by agents to Bogota by plane.[2] That evening, Salazar arrived at the Bunker, the underground location for the *Fiscalia* in Bogota. At some point during May 23, 2005, Salazar executed an Extraterritorial Rights Form, which

---

[1] The *Fiscalia* is analogous to the prosecutor's office.

[2] It is not known whether the agents were Colombian, DEA or both.

ostensibly advised him of his rights under United States law.

Although he signed the Extraterritorial Rights Form, it is also clear Salazar had to have requested counsel on May 23, 2005, because at 8AM the next morning, May 24th, attorney Diego Javier Espita-Plaza appeared at the office of the *Fiscalia* and advised that he was representing Salazar and requested permission to meet with him. That process requires a completion of forms, one of which is a power of attorney, *"poder"* which is given to the detainee for his signature and thumbprint to authenticate his signature.  On May 24, 2005, Salazar signed the poder and authenticated his signature.[3]  His first meeting with counsel occurred that day.

The DEA has an office nearby the Bunker.  The record shows that there was substantial cooperation between DEA agents and Colombian officials.  There were meetings between Salazar and his counsel.  It is difficult, if not impossible, to believe that DEA authorities were unaware that Salazar had requested representation by May 23rd upon his arrest, and was engaged with counsel the next day.

At minimum, based upon the above proffer, a hearing as to the admissibility of the statements is warranted. Defendant believes that this emerging situation requires further investigation in anticipation of a hearing on the admissibility of the post-arrest statements.  Was there a joint venture between the DEA and Colombian authorities such that *Miranda* protections must be afforded to defendant?  Were defendant's *Miranda* rights ignored?

The importance of this inquiry is plain, as the post-arrest statements could be read to imply

---

[3] Defendant has submitted an affidavit, see **Exhibit B**, which has been signed in the courthouse. The defense is in the process of obtaining a copy of the *poder* executed and authenticated by Salazar.

that at some time, defendant was aware of United States deliveries of cocaine.[4] As this case appears to hinge on purported circumstantial and indirect evidence of defendant's guilty knowledge of United States involvement in the subject shipment of cocaine, the post-arrest statements as interpreted by the government, impact this issue.

Respectfully submitted,

S/Linda George

**LINDA GEORGE**
*Attorney for Defendant,*
505 Main Street,  Suite 214
Hackensack, New Jersey  07601
Tel: (201) 487-5225 Fax: 201-487-8807

Dated: June 11, 2007

---

[4] The defense hastens to point out that in its view, the post-arrest statements do not reference or address the transactions that are the subject of the instant Indictment.  Rather, they impart information concerning his past dealings that would be part of the disclosure expressed by an individual who agreed to cooperate.  When pressed for information concerning the criminal conduct that is the subject of the instant indictment, however, Salazar refused to cooperate.  Hence this prosecution.

-4-

## CERTIFICATION OF SERVICE

I, Sarah Robles, certify that on this date I have filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send electronic notification of same to all parties involved.  In addition, I have served a copy to the following as follows:

Hon. Lewis A. Kaplan, U.S.D.J.  **VIA HAND DELIVERY**
United States District Court    (2 courtesy copies)
Southern District of New York
500 Pearl Street
New York, New York 10007

AUSA Anirudh Bansal
U.S. Attorneys' Office
Southern District of New York
One St. Andrews Plaza
New York, New York 10007

AUSA Iris Lan
U.S. Attorneys' Office
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Manuel F. Salazar-Espinosa   Via hand delivery
Inmate No.: 59264-054
MCC New York
150 Park Row
New York, New York 10007

DATED:  June 11, 2007

_SARAH ROBLES_

SARAH ROBLES

# EXHIBIT "B"

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

MANUEL F. SALAZAR ESPINOSA,

    Defendant.

05CR 517(LAK)

## AFFIDAVIT OF MANUEL F. SALAZAR ESPINOSA

| | | |
|---|---|---|
| State of New York | ) | |
| County of New York | ) | SS: |

Manuel P. Salazar Espinosa, being duly sworn, pursuant to his oath, deposes and says:

1.    I am the defendant in the above-captioned matter. I submit this Affidavit in support of the defense motion for an order suppressing post-arrest statements allegedly made by me *without the presence of counsel* on May 23, 24 and 26, 2005.

2.    I was arrested on May 23, 2005 and brought to the office of the *Fiscalia*[1] in Cali, Colombia. I was then taken by DEA and Colombian agents to Bogota by plane. That evening, I arrived at the underground location for the *Fiscalia* in Bogota which I was to learn is referred to as "the Bunker." That same evening, on May 23, 2005, I was handed a form and told to sign it. I have since come to learn that the government contends that I had signed an

---

[1] The *Fiscalia* is analogous to the prosecutor's office.

-1-

Extraterritorial Rights Form.

3.      The Form was not explained to me and I was not asked to initial its provisions signaling my understanding at that time.  Rather, I was asked if I wished to see an attorney, and I stated quite clearly, "yes" but because of the lateness of the hour, none was available that day.  The DEA agents then proceeded to question me.  I did not wish to appear uncooperative, so I provided   general information and information concerning past dealings, but nothing substantive concerning the transaction for which I had been arrested. I would have preferred this discussion to have occurred in the presence of my attorney, but he was not available that evening.

4.      I have since learned that the very next morning, May 24, 2007, at approximately 8AM, attorney Diego Javier Espitia-Plaza appeared at the office of the *Fiscalia* and advised that he was representing me and requested permission to meet with me.  I was not advised that Mr. Espitia-Plaza was attempting to contact me that morning.

5.      It was not until later that day on May 24, 2005, that a power of attorney, *"poder"* was provided to me for signature and thumb print to authenticate my signature. I signed the poder and authenticated my signature.  My first meeting with counsel occurred that day, May 24, 2005.

6.      I observed interactions between individuals who identified themselves to me as DEA officers and Colombian agents.  I told the DEA officers that I wanted an attorney and upon meeting with Mr. Espitia-Plaza I advised the agents of this development.  It is difficult, if not impossible, to believe that DEA authorities were unaware that I had requested representation upon my arrest.

-2-

7.    In response, I was told I was still required to respond to questions, and on May 26, 2005, I was asked to initial each paragraph.

8.    Again, I provided information in an attempt to be cooperative, but no particulars concerning the criminal activity for which I was advised I had been arrested.

_____
Manuel T. Salazar Espinosa

Sworn to before me this  11  day of June, 2007.

_____
LINDO GEORGE
Attorney at Law of N.J.

-3-

# EXHIBIT "A"



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 7, 2007

<u>By Electronic Mail</u>
Linda George, Esq.
505 Main Street
Suite 214
Hackensack, New Jersey 07601

        Re:  <u>United States of America</u> v. <u>MANUEL FELIPE SALAZAR-</u>
             <u>ESPINOSA</u>,
             **S3 05 Cr. 517 (LAK)**

Dear Ms. George:

    The DEA was informed by a Colombian official this week that on May 25, 2005 and May 26, 2005, the defendant was visited in Bogota by one Diego Javier Espitia-Plaza, who claimed to be an attorney. The Colombian official and DEA confirmed that no U.S. authorities had been informed of this visit prior to this week.  <u>See United States</u> v. <u>Yousef</u>, 327 F.3d 56, 141 (2d Cir. 2003) (where defendant claimed he had requested counsel from foreign authorities, but U.S. authorities were not so informed, this "failed to establish that his request had any cognizable legal effect under American law or the Sixth Amendment thereunder").

                    Very truly yours,

                    MICHAEL J. GARCIA
                    United States Attorney
                    Southern District of New York

        By:_____/s/_____
                Anirudh Bansal/Iris Lan
                Assistant United States Attorneys
                (212) 637-2516/2263

# EXHIBIT N-1

*Linda George*
ATTORNEY AT LAW

April 20, 2007

505 Main Street
Suite 214
Hackensack, New Jersey 07601
(201) 487-5225
Fax (201) 487-8807

**VIA FACSIMILE (212)637-0086**
Anirudh Bansal
Assistant United States Attorney
　　For the Southern District of New York
Office of the United States Attorney
One St. Andrews Plaza
New York, New York   10007

**VIA FACSIMILE (212)637-2387**
Iris Lan
Assistant United States Attorney
　　For the Southern District of New York
Office of the United States Attorney
One St. Andrews Plaza
New York, New York   10007

　　　　　　　　　　　　**Re: U.S. v. Manuel Salazar Espinosa**
　　　　　　　　　　　　**Cr. No. :   05-517 (LAK)**

Dear AUSA Bansal and AUSA Lan:

　　　　In follow up to our meeting of yesterday April 19, 2007, please advise as to when I may retrieve one set of the consensual recordings that were made with respect to the investigation of my client above named as well as a full set or the transcripts pertaining to same.

　　　　In addition, and pursuant to Federal Rule of Criminal Procedure 16, please provide me with a copy of the laboratory report (s) pertaining to the seizure of cocaine in Panama in July of 2005 as well as a copy of the arrest report that sets forth another portion of the defendant's post arrest statement as referred to in your April 18, 2007 letter.  Finally, a review of the file provided to me did not include a copy of the extraterritorial rights notification form that was supposedly signed by Mr. Salazar in conjunction with a debriefing after his arrest.  Would you please provide that document as well.

　　　　I await your earliest possible reply, so that I may remit a messenger forthwith.

　　　　　　　　　　　　Very truly yours,

　　　　　　　　　　　　LINDA GEORGE

LG:ms
cc:   Manuel Salazar Espinosa

**A239**

# EXHIBIT O



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 7, 2007

<u>By Electronic Mail</u>
Linda George, Esq.
505 Main Street
Suite 214
Hackensack, New Jersey 07601

        Re:  **<u>United States of America</u> v. <u>MANUEL FELIPE SALAZAR-
             ESPINOSA</u>,
             S3 05 Cr. 517 (LAK)**

Dear Ms. George:

    The DEA was informed by a Colombian official this week that on May 25, 2005 and May 26, 2005, the defendant was visited in Bogota by one Diego Javier Espitia-Plaza, who claimed to be an attorney. The Colombian official and DEA confirmed that no U.S. authorities had been informed of this visit prior to this week. <u>See</u> <u>United States</u> v. <u>Yousef</u>, 327 F.3d 56, 141 (2d Cir. 2003) (where defendant claimed he had requested counsel from foreign authorities, but U.S. authorities were not so informed, this "failed to establish that his request had any cognizable legal effect under American law or the Sixth Amendment thereunder").

                  Very truly yours,

                  MICHAEL J. GARCIA
                  United States Attorney
                  Southern District of New York

            By:_____/s/_____
                Anirudh Bansal/Iris Lan
                Assistant United States Attorneys
                (212) 637-2516/2263