UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MANUEL SALAZAR-ESPINOSA,

                   Movant,

          -against-                                   11 Civ. 0247 (LAK)
                                                    [S3 05 Crim. 517 (LAK)]

UNITED STATES OF AMERICA,

                   Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM AND ORDER

LEWIS A. KAPLAN, *District Judge.*

          Manuel Salazar-Espinosa ("Salazar"), following his extradition from Colombia, was convicted by a jury in 2007 of conspiring to import narcotics into the United States in violation of 21 U.S.C. § 963, distribution of narcotics with intent to import them in violation of 21 U.S.C. §§ 959(a), 959(c), 960(a)(3), and 960(b)(1)(B)(ii), and conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h) and sentenced on February 5, 2008 principally to 360 months imprisonment on the first two counts and 240 months on the third count, the terms to run concurrently. The Second Circuit affirmed on September 22, 2009.[1] The Supreme Court denied certiorari on January 25, 2010.[2]

---

[1]       348 Fed. Appx. 686 (2d Cir. 2009).

[2]       130 S.Ct. 1311 (2010).

      The government mistakenly asserts that certiorari was denied on January 25, 2009 and that the petition therefore had to be filed on or before January 25, 2010. Gov't Mem. at 33.

*Salazar's Contentions and their Procedural Context*

On January 11, 2011, Salazar filed a motion under the above civil docket number to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255, principally on the ground of ineffective assistance of counsel. Two days later, he filed a motion for a new trial in his criminal case on the ground that one of the trial witnesses against him, Alvaro Ardila-Rojas ("Ardila") gave perjured testimony.

A week later, the Court, having noticed the apparent untimeliness of the motion for a new trial, directed Salazar to show cause why that motion should not be denied as untimely. It gave him also the alternative to request that the motion be withdrawn as an application under Federal Rule of Criminal Procedure 33 and recharacterized as an amendment to his Section 2255 motion.[3] The Court, however, made clear that it was not thereby "suggest[ing] any view as to whether the motion, even if recharacterized as an amendment to the pending Section 2255 motion, would be timely or seek relief properly available under Section 2255. *See, e.g., Guinan v. United States,* 6 F.3d 468, 470-71 (7th Cir. 1993), *abrogated on other grounds, Massaro v. United States,* 538 U.S. 500 (2003)."[4]

By subsequent letter, Salazar sought to withdraw the Rule 33 motion and requested that it be denominated as an amendment to the Section 2255 motion. The Court granted that request, adding that "this ruling does not resolve any substantive issues including but not limited to

---

[3]     *See United States v. Pedraza,* 101 Fed. Appx. 314 (10th Cir. 2004).

[4]     DI 146.

timeliness and cognizability under § 2255."[5]  Accordingly, the Court treats what began as the new trial motion as an amendment, interposed on January 28, 2011, to the Section 2255 motion.  It is important to recognize, however, that Salazar has altered his position dramatically in transforming his new trial motion into a Section 2255 contention.  Whereas the new trial motion sought a new trial on the basis of alleged newly discovered evidence of Ardila's supposed perjury, Salazar now contends that his conviction should be set aside entirely because the government knew or should have known that Ardila's testimony was perjured.  The Court will begin with that contention and proceed then to the grounds raised in the original Section 2255 motion.

*Ardila's Alleged Perjury*

    *Timeliness*

Salazar's argument with respect to Ardila's alleged perjury is before the Court only as an amendment to this Section 2255 motion.  Its timeliness therefore is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which prescribes a one year limitations period, in this instance from that date on which Salazar's conviction became final.  As the Supreme Court denied certiorari on January 25, 2010, this aspect of his amended Section 2255 motion would be timely only if it was filed within one year of January 25, 2010 or, having been filed later, related back to his original Section 2255 motion, which was filed on January 13, 2011.

The facts concerning the filing of the amendment to the motion are somewhat involved.  The docket reflects the electronic filing at 8:16 p.m. on January 24, 2011 of Salazar's

---

[5]     DI 148.

amendment.[6]  At 11:32 a.m. on the following day, however, the Clerk directed Salazar's counsel to re-file the document manually, as this case had not been designated as an electronic filing case.[7] Counsel did not file the amendment until January 28, 2011.  Accordingly, putting aside any possibility of relation back to an earlier filing, the amendment was filed after the statute of limitations had run unless the January 24, 2011 electronic filing was effective.

   If the electronic case filing rules and instructions were crystal clear, rejection of this claim as untimely might well be appropriate.  But they were not in a critical respect.  While they stated that habeas cases were not within the scope of electronic filing, they did not speak directly to Section 2255 motions, which replaced traditional habeas petitions for federal prisoners. Counsel's error therefore was understandable, especially in light of the fact that the Clerk previously had accepted without objection electronic filings of several other papers in this case.[8]  In the circumstances, the electronic filing of the amendment on January 24, 2011 was timely.

*The Merits*

   "When false testimony is provided by a government witness without the prosecution's knowledge, due process is violated only 'if the testimony was material and "the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not

---

[6]  DI 7.

[7]  When the electronic filing system was implemented, it did not permit electronic filing in habeas corpus cases, as the Court's electronic case filing rules and instructions stated.  That rule was altered, effective September 1, 2010, to provide that habeas cases "may be designated as ECF cases."  This case was designated an electronic filing case on April 15, 2011, well after the pivotal events, as reflected on the docket sheet.

[8]  DI 1-6.

have been convicted.'"" [9]  In contrast, where false testimony is provided with the prosecution's knowledge, a conviction cannot stand if "there was a reasonable likelihood that the testimony affected the judgment of the jury or that it may have had an effect on the outcome of the trial." [10] The starting point for analysis of Salazar's claim therefore is whether he sufficiently has demonstrated that Ardila's trial testimony was perjurious even to the limited extent required to warrant further consideration.

The Second Circuit has cautioned that "witness recantations 'must be looked upon with the utmost suspicion'" because they (1) upset societal interests in the finality of convictions, (2) often are unreliable and offered for suspect motives, and (3) in many cases simply impeach cumulative evidence rather than undermine the accuracy of a conviction. [11]  For this, among other reasons, an applicant for relief based on an alleged recantation must submit a specific sworn statement by the witness.  A "general, unsworn recantation . . . is insufficient to contradict sworn trial testimony." [12]  But there is no sworn recantation by Ardila here.  The affidavit of Salazar's former trial counsel, to the effect that Ardila told her – well over a year before Salazar sought relief

---

[9] *Ortega v. Duncan*, 333 F.3d 102, 108 (2d Cir. 2003) (quoting *United States v. Wallach*, 935 F.2d 445, 456 (2d Cir. 1991), in turn quoting *Sanders v. Sullivan*, 863 F.2d 218, 226 (2d Cir. 1988) (alternation in *Wallach*) (footnote omitted)).

[10] *Mills v. Scully*, 826 F.2d 1192, 1195 (2d Cir. 1987).

[11] *Haouari v. United States,* 510 F.3d 350, 353 (2d Cir. 2007) (citing *Dobbert v. Wainwright,* 468 U.S. 1231, 1233-34 (1984) (Brennan, J., dissenting from denial of certiorari)).

[12] *Haouari*, 510 F.3d at 354.

in this Court[13] – that he had testified falsely at trial on one point, is not sufficient. As the Circuit has made abundantly clear, "[a]iry generalities, conclusory assertions *and hearsay statements* will not suffice."[14] This is especially true where, as here, the witness, "was involved in the same criminal scheme and, having received the benefit of his cooperation agreement, now sits in jail [serving a sentence of 372 months] with nothing to lose by recanting,"[15] assuming *arguendo* that he actually recanted as Salazar's former counsel claims. Thus, as there is no sworn statement by Ardila containing specific assertions, Salazar has not made out a *prima facie* case that Ardila's testimony was perjurious.

Even assuming *arguendo* that Salazar had demonstrated that Ardila gave false testimony at trial, there is no evidence that the government knew of any such perjury. Relief for actual innocence based on newly-discovered evidence is not available on a Section 2255 motion absent separate constitutional error.[16] In this case, there is no evidence of any such error. Salazar asserts that the government should have known of Ardila's allegedly false testimony because of

---

[13]

       Salazar's former counsel claims that the alleged recantation took place in a jail house meeting pursuant to her subpoena during the trial of Jorge Mario Paredes-Cordova. The subpoena is dated October 5, 2009. The trial began in September and ended in November 6, 2009. Docket sheet, *United States v. Paredes-Cordova*, 03 Crim. 0987 (DAB). The alleged recantation therefore is said to have occurred between October 5 and November 6, 2009 – more than a year before counsel prepared her initial "certification" relating the alleged conversation and more than 15 months before Salazar sought relief in this case.

[14]

       *Haouari*, 510 F.3d at 354 (quoting *United States v. Aiello*, 814 F.2d 109, 113 (2d Cir. 1987) (internal quotation marks omitted) (emphasis added).

[15]

       *Id.* at 353.

[16]

       *Herrera v. Collins*, 506 U.S. 390, 400 (1993) ("[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding").

nature of his statements in his Rule 11 proceeding, his testimony at another trial, and the conduct of another government informant. None, however, was sufficient to contradict Ardila's prior sworn testimony, let alone demonstrate that the government was aware of any perjury.

In all the circumstances, Salazar has failed to make out even a *prima facie* case that Ardila gave false testimony at trial, let alone that he did so perjuriously, that the government knew of any such perjury, or that Salazar's account of Ardila's alleged recantation, even if taken at face value, probably would have affected the result in this case.

*Ineffective Assistance – The Alleged Failure to Investigate, to Obtain an Affidavit
from Colombian Counsel and to Move to Suppress Statements in Colombia*

Salazar next contends that his original counsel in this Court, Lawrence Hermann, Esq., rendered ineffective assistance of counsel in that he failed to discover grounds for a motion, and move, to suppress post-arrest statements made by Salazar in Colombia. For reasons set forth in the government's memorandum of law at pages 12-24, Salazar has not established that Mr. Hermann's representation fell below the constitutional minimum in any respect, that the postulated suppression motion would have been granted had it been made, or that the result at trial probably would have been different even if the statements had been suppressed. Indeed, there is no evidence that Salazar ever told Mr. Hermann that he had requested counsel while in Colombian custody.

*Ineffective Assistance – Failure to Request Instruction on Withdrawal*

Salazar next claims that trial counsel was ineffective because Ms. George, his trial counsel, failed to request an instruction on withdrawal from the conspiracy. This argument too is unpersuasive.

Under *Strickland v. Washington,*[17] Salazar must demonstrate that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms" and "affirmatively prove prejudice" by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[18]

*Counsel's Performance*

In assessing counsel's performance, the Court begins with two premises. First, "mere cessation of [criminal] activity is not enough" to make out a withdrawal defense. "[T]here must also be affirmative action, either the making of a clean breast to the authorities . . . or communication of the abandonment in a manner reasonably calculated to reach co-conspirators."[19] Moreover, "[t]he burden of establishing an effective withdrawal from a conspiracy rests upon the defendant."[20] Second, a defendant "is entitled to have instructions presented relating to any theory of defense for which there is any evidence, no matter how weak or incredible that evidence may be."[21]

In view of the second of these premises, the Court assumes, without deciding, that the defense, upon request, would have been entitled to an instruction on withdrawal given Salazar's imprisonment during the last couple of months of the alleged conspiracy and his inculpatory

---

[17]

466 U.S. 668 (1984).

[18]

*Id.* at 688-89, 693, 694.

[19]

*United States v. Borelli*, 336 F.2d 376, 388 (2d Cir. 1964) (internal citation omitted).

[20]

*E.g., United States v. Goldberg*, 401 F.2d 644, 648 (2d Cir. 1968).

[21]

*United States v. LaMorte*, 950- F.2d 80, 84 (2d Cir. 1991).

statements in May 2005 to U.S. authorities while he was in jail in Colombia.  But the fact that such an instruction presumably would have been required if requested does not mean that counsel's failure to make such a request rendered her services ineffective in constitutional terms.

There is a strong presumption that counsel's performance was adequate and that all decisions were made "in the exercise of reasonable professional judgment."[22]  As detailed in the government's memorandum,[23] there was substantial evidence that Salazar continued his cocaine trafficking activities by overseeing the 1.5 ton cocaine shipment secreted in a crane from Colombia to the United States even while he was in jail in Colombia.  The failure to request a withdrawal instruction in such circumstances was entirely reasonable, as the Court of Appeals made clear in *Salameh*.[24]

*Prejudice*

Even if the failure to request the instruction had fallen below the minimum standard of performance required by the Sixth Amendment, Salazar would not have established prejudice for two reasons.

First, as *Salameh* made clear, the strong evidence of his continued participation in the conspiracy from his jail cell would have made acquittal on the basis of withdrawal unlikely.

Second, and perhaps more important, a jury properly instructed on withdrawal would have been told that it was Salazar's burden to prove withdrawal.  The evidence of his continued

[22]

*Strickland*, 466 U.S. at 690.

[23]

Govt' Mem. at 25.

[24]

*United States v. Salameh*, 16 Fed. Appx. 73, 77 (2d Cir. 2001).

participation despite his incarceration and his statements to the DEA would have precluded a jury finding that Salazar had carried his burden of proof.

*The Alleged Insufficiency of Evidence and Hindsight*
*Errors in the Jury Charge on the Money Laundering Count*

Salazar argues that the conduct which underlies his conviction on the money laundering count would not constitute a crime today in light of *Cuellar v. United States*,[25] and *United States v. Santos*.[26]  He overlooks the fact, however, that *Santos* and *Cuellar* were decided on June 2, 2008, more than four months before he filed his direct appeal in this case.  Yet he raised neither before the Court of Appeals.  In any case, neither would have rendered him actually innocent of money laundering.

As an initial matter, claims not raised on direct appeal are waived unless the petitioner demonstrates either cause and prejudice or that he actually is innocent of the offense.[27] The latter requires a demonstration that it is more likely than not that no reasonable juror would have convicted the petitioner.[28]

Salazar has not demonstrated cause for and prejudice from the failure to raise these

---

[25]

553 U.S. 550 (2008).

[26]

553 U.S. 508 (2008).

[27]

*De Jesus v. United States*, 161 F.3d 99, 104 (2d Cir. 1998)

[28]

*Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002).

points on direct appeal.[29] Nor, for the reasons set out by the government at pages 27 through 32 of its memorandum, has he demonstrated actual innocence of the money laundering charge against him.

<em>Conclusion</em>

For the foregoing reasons, Salazar's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is denied in all respects.

A certificate of appealability is denied, and the Court certifies that any appeal herefrom would not be taken in good faith within the meaning of 28 U.S.C. §1915(a)(3).

SO ORDERED.

Dated:            July 11, 2011

                                        _____
                                               Lewis A. Kaplan
                                        United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[29] Salazar's contention that the cause requirement was satisfied "because the legal basis for the claim was not reasonably available to counsel" or, alternatively, that the failure to raise it amounted to ineffective assistance of counsel is without merit. DI 13, at 12-13. The legal argument, for whatever it was worth, was fully available to Salazar's appellate counsel well before his brief was filed on direct appeal, as the Supreme Court's docket shows that certiorari was granted in *Santos* and *Cuellar* on April 23 and October 15, 2007, even before Salazar was sentenced in the district court. It is equally clear, however, "that an attorney's failure to predict changes in the governing law does not constitute ineffective assistance of counsel." *Bretan v. United States*, Nos. 05 Civ. 0916 (LAK), 03 Crim. 0358 (LAK), 2006 WL 238994, at *6 (S.D.N.Y.) (citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994), *reconsideration denied*, 415 F. Supp.2d 351 (S.D.N.Y.), *aff'd*, 282 Fed. Appx. 932 (2d Cir. 2008).